[L. A. No. 4781.  In Bank.—June 6, 1917.]

JOHN C. CLINE, Respondent, v. WALTER A. LEWIS, as Auditor of the County of Los Angeles, Appellant.

PUBLIC OFFICERS—LOS ANGELES COUNTY CHARTER—COMPENSATION OF ELECTION OFFICERS.—Section 52 of the Charter of Los Angeles County (Stats. 1913, p. 1500), providing that "the compensation of any elective county or township officer shall not be increased nor diminished during the term for which he was elected, nor within ninety days preceding his election," means that the amount of compensation to which an elective officer shall be entitled during his term of office shall be controlled by whatever law was in existence on the ninety-first day preceding the election, with respect to the salary of that office for and during the ensuing term.

Id.—Time for Taking Effect of Ordinances—Control by General Laws.—There being no provision made in the charter of the county of Los Angeles determining the time when ordinances shall take effect or as to the subjects of initiative and referendum, such matters, under section 7½ of article XI of the Constitution, are controlled by the Political Code as a part of the general law of the state.

Id.—Ordinance Fixing Salary of Sheriff—Time of Taking Effect.—Under section 4058 of the Political Code, an ordinance of the board of supervisors of Los Angeles County increasing the salary of the sheriff, as to which no referendum proceedings were taken, did not become operative as an existing law until the expiration of thirty days from its final passage; and the salary of a sheriff who was elected at a time less than ninety days after the ordinance became so operative is not to be measured thereby for the ensuing term.

APPEAL from a judgment of the Superior Court of Los Angeles County. Lewis R. Works, Judge.

The facts are stated in the opinion of the court.

Thomas Lee Woolwine, District Attorney, and George E. Cryer, Chief Deputy, for Appellant.

Joseph L. Lewinsohn, Daniel M. Hunsaker, and Hunsaker & Britt, for Respondent.

SLOSS, J.—The appeal before us was taken, in the first instance, to the district court of appeal for the second appellate district. The justices of that court differed in opinion, and the cause was accordingly transferred to this court.

While the appeal was pending in the district court of appeal, an opinion, of which the following is a copy, was prepared by Presiding Justice Conrey, of that court.

"This is an appeal by the respondent in the court below from a judgment granting the petitioner's demand for a peremptory writ of mandate.

"At the general election held in November, 1914, the petitioner was elected to the office of sheriff of Los Angeles County for the term beginning January 4, 1915. Claiming that his salary is five thousand dollars per year, he presented demands computed at that annual rate for the months of January to November, 1915. Appellant, as county auditor, refused to audit these demands for any sum in excess of a salary computed at the rate of four thousand dollars per year.

"Ordinance 326 (New Series) of the county of Los Angeles, as adopted by the board of supervisors under date of June 2, 1913, provided for a sheriff's salary which, during the term of petitioner, was to be four thousand dollars per annum. On the first day of August, 1914, the board of supervisors passed and adopted an ordinance amending said Ordinance 326 and thereby providing that the salary of the sheriff of Los Angeles County should be five thousand dollars per year. We are called upon to determine whether this latter provision applies to the sheriff's present term of office.

"Section 52 of the Charter of Los Angeles County (Stats. 1913, p. 1500) states that 'the compensation of any elective county or township officer shall not be increased nor diminished during the term for which he was elected, nor within ninety days preceding his election. . . .' As applied to the sheriff, this plainly means that the amount of compensation to which the sheriff shall be entitled during his term of office shall be controlled by whatever law was in existence on the ninety-first day preceding the election, with respect to the salary of that office for and during the ensuing term. August 1, 1914, was the ninety-fourth day preceding the general election of that year. If the ordinance passed on that date was not an existing law for a full period of ninety days prior to November 3, 1914, it cannot be the law under which petitioner may claim his salary. This brings us to certain questions arising under the provisions of section 4058 of the Political Code, under which it is claimed that the ordinance could not become a law until thirty days after its final passage by the board of supervisors.

"The authority for county charters is derived from section 7½, article XI, of the state Constitution, and it is there declared that a county charter, when duly adopted and approved, 'shall supersede all laws inconsistent with such charter relative to the matters provided in such charter.' It is further declared, among other things, that county charters shall provide 'for the powers and duties of boards of supervisors . . . ; provided, that the provisions of such charters relating to the powers and duties of boards of supervisors and all other county officers shall be subject to and controlled by general laws.' The charter of Los Angeles county, in article III, section 11 thereof, declares it to be the duty of the board of supervisors to 'provide, by ordinance, for the

compensation of elective officers and of its appointees, unless such compensation is otherwise fixed by this charter.' It is conceded that under this section valid ordinances may be passed establishing the salary of a sheriff. It is equally clear that there may be two existing and valid ordinances at the same time, one operative with respect to the current term, and another postponed in its operation to a subsequent term.

"The charter is silent as to the time when ordinances shall take effect and as to the subjects of initiative and referendum, and under the foregoing provisions of the Constitution these matters are subject to be controlled by the provisions of the Political Code as a part of the general law of the state. Section 4058 of the Political Code provides for the enactment of ordinances by the initiative process and also for referendum votes upon ordinances passed by the board of supervisors. As to the latter we find therein the following provision: That no ordinance passed by the board of supervisors (with exceptions not applicable in the present case) 'shall go into effect before thirty days from its final passage; and if, during said thirty days, a petition signed by qualified electors of the county equal to ten per cent of the entire vote cast therein for all candidates for Governor of the state at the last preceding general election at which a Governor was voted for, protesting against the passage of such ordinance, be presented to the board, the same shall thereupon be suspended from going into operation, and it shall be the duty of the board to reconsider such ordinance. If said board shall thereupon not entirely repeal said ordinance, it shall submit the same to a vote of the electors either at a general election or a special election to be called for the purpose, and such ordinance shall not go into effect or become operative, unless a majority of the voters voting upon the same shall vote in favor thereof.'

"A legislative act cannot become operative until it has become a law, but the time when it becomes operative may be much later than the date when it becomes a law. This is illustrated by frequent instances where legislative acts by their own terms are not to go into effect until a certain date named. It is well illustrated by the instance to which I have referred of two laws in existence at the same time, one establishing the present salary of a public office and another establishing the future salary of that office. 'The Constitution (article XI, section 9) clearly implies that there must be a

law in force, fixing the compensation of every county and township officer at the date of his election, and it imperatively forbids any increase of that compensation by a law subsequently enacted. It permits, however, an increase of compensation to the person to be elected to the ensuing term, and if such increase is provided, it must be by a law which for that limited purpose takes effect long before the expiration of the current term—the old law remaining in the meantime in full effect as to the incumbent. In such a case the operation of the amended law is postponed, not because it is unconstitutional, but because the courts construing it in the light of the Constitution, hold that such was the intention of the legislature.' (*Smith* v. *Mathews,* 155 Cal. 752, 757, [103 Pac. 199, 202].)

"When it is said in section 4058, *supra,* that no ordinance 'shall go into effect before thirty days from its final passage,' and again, that where a referendum petition has been filed, 'such ordinance shall not go into effect or become operative, unless a majority of the voters voting upon the same shall vote in favor thereof,' is it merely intended that the operation of the ordinance and its enforceability in any concrete case shall be postponed? Or do the words 'shall go into effect,' or 'shall not go into effect,' mean that it shall not be an existing ordinance in any event during the period of thirty days from its final passage by the board of supervisors, and (if referendum petition be filed) until further approved at the referendum election? In the case *In re Pfahler,* 150 Cal. 71, 84, [11 Ann. Cas. 911, 11 L. R. A. (N. S.) 1092, 88 Pac. 270, 275], the supreme court gave full consideration to the initiative and referendum provisions of the charter of the city of Los Angeles and expressed its view as to the effect of such provisions as follows:

" 'The effect of the provisions of the Los Angeles charter, as amended, is to give the legislative power vested in the city to the council and mayor, *subject to such control by the electors as is given them by the initiative and referendum provisions.*

" 'The reserved power of the electors to directly enact such ordinances as the council refuses to enact, as well as their power to effectually veto ordinances adopted by the council, is made paramount to the power of the council and mayor, the council being without power to repeal or amend an ordinance

so enacted, and the objection that under the initiative we have "two equal co-ordinate law-making bodies, the one absolutely independent of the other," is therefore without foundation. This feature renders the decision in *Ex parte Anderson*, 134 Cal. 69, [86 Am. St. Rep. 236, 66 Pac. 194], a decision strongly relied on by petitioner, inapplicable, for the only thing decided therein was that there could not be under our system of government two equal, co-ordinate law-making powers, "each existing without any restrictions the one upon the other.'" The analogy suggested in the foregoing quotation between the referendum and the familiar power of veto tends to support the view that an ordinance or statute during the period when it remains subject to referendum, has no validity as a law, for it will scarcely be contended that bills which are subject to executive veto have any validity or can be considered as existing laws until the time has expired within which such veto might be exercised.

"Section 4057 of the Political Code provides with respect to county ordinances that 'no ordinance passed by the board shall take effect within less than fifteen days after its passage,' and further provides for publication of each ordinance within said period of fifteen days. If the referendum provisions of section 4058 do not have the effect to postpone for thirty days after its passage the time when an ordinance becomes a law, and if in a given case the referendum petition be filed within the thirty days, but more than fifteen days after the date of the passage of the ordinance, then the effect of a subsequent unfavorable vote upon the ordinance at the referendum election will be that of a repeal of an existing law; on the other hand, a favorable vote by the electors will not be a part of the process of enactment of the law, but will be merely a refusal to veto such existing law. The language of the statute does not require that we adopt a view so far out of harmony with the theory of referendum legislation. Where the law governing the process of enactment requires something to be done before the proposed enactment shall take effect, it generally means that the enactment shall not be a law until that thing has been done. Thus, where the statute provided that a county ordinance should not take effect until it had been published in its entirety, and the entire ordinance was not published, it was treated as a nonexistent ordinance. (*People* v. *Russell*, 74 Cal. 578, [16 Pac. 395].)

"It is my conclusion that the ordinance passed by a vote of the board of supervisors on August 1, 1914, amending Ordinance 326, was not in any sense in force as an existing law until a time less than ninety days preceding petitioner's election as sheriff; and that his salary for the current term is not to be measured by that amendment.

"The judgment should be reversed."

The quoted opinion contains an adequate statement of the facts involved in the controversy. We think, too, that the learned presiding justice made correct disposition of the legal questions presented. We adopt his opinion as the expression of our own views, adding merely the statement that the conclusion reached is in harmony with the decision of this court in *Harrison* v. *Colgan*, 148 Cal. 69, [82 Pac. 674].

The judgment is reversed.

Shaw, J., Melvin, J., and Henshaw, J., concurred.

ANGELLOTTI, C. J., Concurring.—I concur.

Were the question a new one in this state, I would feel very doubtful as to the correctness of the conclusion as to the proper construction of the charter provision involved. It seems to me, however, that the construction that must be given to section 52 of the Los Angeles County Charter, so far as pertinent to the case at bar, is determined by the decision of this court in *Harrison*-v. *Colgan*, 148 Cal. 69, [82 Pac. 674]. I do not think that what was said as to *when* the salaries there involved were increased can be held to be *obiter dictum*. That decision was rendered in the year 1908. The Los Angeles County Charter was framed and submitted to and approved by the electors of the county in the year 1912. In all material respects section 52 thereof is similar to the provision of the Constitution considered in *Harrison* v. *Colgan, supra,* and I do not think we would be warranted in holding otherwise than that it was adopted in the light of that decision and with the meaning given thereby to similar language.

Rehearing denied.