[Civ. No. 14110.   First Dist., Div. One.   June 6, 1949.]

HORACE P. ROSS, as County Auditor, etc., Petitioner, v. BOARD OF RETIREMENT OF THE ALAMEDA COUNTY EMPLOYEES' RETIREMENT ASSOCIATION et al., Respondents.

Hubert W. Bryant for Petitioner.

J. F. Coakley, District Attorney, R. Robert Hunter and Richard H. Klippert, Deputy District Attorneys, for Respondents.

WARD, J.—This proceeding in mandate involves the right of petitioner to become a member of the Alameda County Employees' Retirement Association. ▆ Specifically it requires a determination of the question whether an elective officer has a right to membership and subsequent retirement under the provisions of the retirement law and the Constitution.   If this question is answered in the affirmative then the date of the county's acceptance of a constitutional privilege plays a part in the legal rights of the petitioner.   In brief,

does the date of effectiveness or the date of operation of an ordinance providing for retirement privileges control?

The petition sets forth that petitioner has been continuously in the service of the county of Alameda since March 1, 1905, and that since April 21, 1931, he has been the duly qualified and acting auditor of the county. He was last elected as such official on June 4, 1946, and his current term as auditor began January 6, 1947. The compensation for his services is paid by the county.

The Constitution of California, article IV, section 31, provides, ''The Legislature shall have no power to give or to lend, or to authorize the giving, or lending, of the credit of the State, or of any county, city and county, city, township or other political corporation or subdivision of the State . . . nor shall it have power to make any gift or authorize the making of any gift, of any public money or thing of value to any individual, municipal or other corporation whatever.'' Article XI, section 9, of the Constitution formerly provided that the compensation of a municipal officer should not be increased after his election or during his term of office. A retirement benefit constitutes compensation. Section 9 was repealed in 1933 and a similar provision inserted in article XI, section 5, which reads, ''The compensation of any county, township or municipal officer shall not be increased after his election or during his term of office, nor shall the term of any such officer be extended beyond the period for which he was elected or appointed. The Legislature by a two-thirds vote of the members of each House may suspend the provision hereof prohibiting the increase of compensation of any county, township or municipal officer after his election or during his term of office for any period during which the United States is engaged in war and for one year after the termination of hostilities therein as proclaimed by the President of the United States.'' The Legislature has provided methods of accepting the above constitutional provision which will be mentioned later.

In *Holland* v. *Byram*, 28 Cal.2d 567 [170 P.2d 937], justices of the peace successfully sought a writ of mandate directing certain county officers to approve and pay their increased salaries as enacted by ordinance during their term of office. The respondent county officers relied upon the California constitutional provisions quoted above. The Supreme Court quoted the arguments on the proposed passage of the amendment suspending the provisions against increase

of compensation during a term of office which were submitted to the voters of the state at the general election in 1944. The Supreme Court stated: "It is clear therefore that the constitutional amendment was intended to declare a statewide policy authorizing for a limited period the removal of restrictions prohibiting salary increases during terms of office. The article thus amended contains the section which grants to counties having freeholders' charters the power to adopt the restrictive provision contained in the Los Angeles County charter. Inasmuch as the effect of the constitutional amendment and the legislative act adopted pursuant thereto was to suspend the constitutional restriction for the designated period, it is only reasonable to suppose that the same effect was intended with respect to the charter provision. Obviously, the necessity for the wartime suspension was equally applicable to all counties in the state, including counties with freeholders' charters. In other words, the conditions brought about by the war generally affected all public officers and were of concern to the state as a whole." (Pp. 568-569.) Thus the policy authorizing the increases of salary for elective officers during their term of office has received judicial approval. The rule applies equally to counties governed by charter provision.

In pursuance of the constitutional limitation expressed in article XI, section 5, certain Government Code sections were added to the "County Employees Retirement Law of 1937." (Gov. Code, § 31450.) Government Code, section 31500 provides that, "A retirement system is established in any county for eligible officers and employees by the adoption of an ordinance, accepting this chapter, by: (a) A majority vote of the electors voting on the proposition at a special or general election; or (b) A four-fifths vote of the board of supervisors." Under the 1937 act officers holding an elective position could become eligible for retirement by filing application for membership at the commencement of each term of office for which he was elected. (Stats. 1937, p. 1902, § 44.) In 1945, the section was changed to provide for membership on the first day of the month after filing application, but the declaration or application must be filed 90 days after certain designated events or periods. A similar provision was placed in Government Code, section 31553 which now reads, "Elective officers become members of the retirement association on the first day of the month after filing a declaration with the board to become a member. The declaration shall be filed within 90

days after: (a) First taking office. (b) The *effective* date of a system established pursuant to this chapter." (Italics added.) Section 31501 provides that, "This chapter becomes operative in any county on either January 1st or July 1st following the adoption of the ordinance, as specified in the ordinance, but not sooner than 60 days after its adoption." In 1947, the Legislature extended the period of suspension until one year after the termination of hostilities. It is admitted that war hostilities were terminated by presidential proclamation on December 31, 1946 at 12 o'clock noon.

Section 14¾ of the charter of Alameda County gives the board of supervisors authority to provide for participation in the state employees' retirement system of all persons in the service of the county who are eligible for membership by enactment of an ordinance by a four-fifths vote of the members of the board of supervisors. By the passage and adoption of ordinance 446 the board of supervisors accepted the provisions of the Retirement Law of 1937 on October 21, 1947. Section 2 of the ordinance provided that the Retirement Law "shall become operative" on January 1, 1948, and section 3 provided that "This Ordinance shall take effect thirty days from and after the date of its passage, . . ."

It is conceded by respondent board that, from a factual standpoint, petitioner has complied with all formalities and performed all acts prescribed for membership in the retirement system. The main and final question in this case is whether the effective date or the operative date is the controlling one in determining whether the petitioner is entitled to membership and the resultant benefits upon retirement. Respondent board frankly admits that if the effective date, November 20, 1947, is controlling then respondent's objections to the petition are not well founded.

Government Code, section 31501 purports to give alternative dates, January 1 or July 1, "following the adoption of the ordinance, as specified in the ordinance" when the system becomes "operative." If the dates and time limit mentioned in section 31501 are controlling then it should be determined that the operative date mentioned in the ordinance, January 1, 1948, is without the provision of chapter 4 of the statutes of 1947, page 477, declaring that the provisions of the Constitution, article XI, section 5, are to continue suspended until one year after hostilities terminate. In brief, such conclusion would eliminate January 1, 1948, as the date that the ordinance could become operative as to elective of-

ficers. If this is true and it is necessary to fix an operative date then the ordinance should have been passed and adopted at a period that would have fixed July 1, 1947 as the operative date, "but not sooner than 60 days after its adoption." Add to this the usual 30 days between the passage or adoption and the "effectiveness" of an ordinance and it is found that upon the facts of this particular case approximately nine months would be a dead period in the year 1947, during which time the benefits of the suspension period would not be available to those otherwise eligible to membership in the retirement association. That this result is not in accordance with the expressed reasons given by the Legislature appears from chapter 4 of the statutes of 1947 extending the time limit to increase the salary of elective officers during incumbency which was approved January 30, 1947. The reason set forth in the act is that "These officers are being compelled to curtail their manner of living drastically and are rapidly exhausting their savings to provide themselves and their families with the common necessities of life. In order to enable the Legislature, counties, and cities to take the necessary steps to relieve the distress of these officers, who in many cases have faithfully served the public over a period of many years, it is necessary that this act take effect immediately." (P. 478.)

Another circumstance appears in relation to the history of the passage by the state Legislature of acts applicable to acceptance by a county or other branch of government of the rights under the retirement system which indicate that the operative date from a practical standpoint is merely an adjunct of convenience designating a method of procedure to operate the substantive law—the constitutional provision, article XI, section 5. The Legislature acting pursuant to the authority granted by the Constitution in 1945 suspended the provisions of article XI, section 5, of the Constitution for a period of six months (Stats. 1945, ch. 5, p. 316) "commencing upon the effective date of this act," which was January 24, 1945, and continuing for six months after hostilities terminated in the war in which this country was then engaged. If respondent's contention in relation to the suspension of the one-year period is correct, that ordinance 466 and its provisions are of no avail because January 1, the claimed operative date, is without the period of suspension, then July 1 would have been unavailable under the 1945 act. (Stats. 1945, ch. 5, p. 317.)

If a statute or ordinance is susceptible to different inter-

pretations and if its validity may be supported by a reasonable construction such should receive favorable consideration. It may be assumed that each clause was inserted for a useful purpose. (23 Cal.Jur. 757.)

Should the phrase "but not sooner than 60 days after its *adoption*" (italics added) be controlling without reference to either January 1 or July 1 as the date upon which the establishment of the system becomes "operative" (Gov. Code, § 31501), then it should be determined that the system became operative prior to the noon hour on December 31, 1947, as the date of "adoption" is the date of passage of the ordinance. The date of adoption was October 21, 1947—more than 60 days elapsed between October 21, 1947, and December 31, 1947.

However, the date of "adoption" or passage of an ordinance or statute is not the date the enactment becomes of actual force and power, that is, effective, unless the enactment should specifically so declare. (Vol. 2, Words and Phrases (perm. ed.), pp. 483, 485.)

The effective date of a statute or ordinance may depend upon the happening of a contingency (*Busch* v. *Turner*, 26 Cal.2d 817 [161 P.2d 456, 171 A.L.R. 1063]), but the effectiveness of the present ordinance is not dependent upon the arrival of January 1, 1948. The ordinance announced the date of its effectiveness as 30 days after the date of its passage. It was passed and adopted on October 21, 1947. At least on and after November 20, 1947, the date the ordinance became effective, it was part of every eligible officer or employee's contract that starting on January 1, 1948, he would be entitled to certain retirement benefits. However, the operative date is merely a date of convenience to the officers in charge of the retirement system for bookkeeping, retirement or other reasons. Otherwise the operative date is a false factor—the key or controlling date is the "effective" date. From the effective date the retirement right became an integral portion of contemplated compensation. The *right* to future retirement vested on the date of the effectiveness of the ordinance. The court in *Kern* v. *City of Long Beach*, 29 Cal.2d 848, 853, 855 [179 P.2d 799], said, "Since a pension right is 'an integral portion of contemplated compensation' (*Dryden* v. *Board of Pension Commrs.*, 6 Cal.2d [575] at p. 579 [59 P.2d 104]), it cannot be destroyed, once it has vested, without impairing a contractual obligation. Thus the courts of this

state have refused to hold, in the absence of special provision, that public employment establishes tenure rights, but have uniformly held that pension laws such as the Long Beach Charter provision establish contractual rights.''

''Insofar as the *time* of vesting is concerned, there is little reason to make a distinction between the periods before and after the pension payments are due. It is true that an employee does not earn the right to a full pension until he has completed the prescribed period of service, but he has actually earned some pension rights as soon as he has performed substantial services for his employer. (See *Dryden* v. *Board of Pension Commrs.*, 6 Cal.2d 575, 579 [59 P.2d 104] ; *French* v. *French*, 17 Cal.2d 775, 777 [112 P.2d 235].) He is not fully compensated upon receiving his salary payments because, in addition, he has then earned certain pension benefits, the payment of which is to be made at a future date. While payment of these benefits is deferred, and is subject to the condition that the employee continue to serve for the period required by the statute, the mere fact that performance is in whole or in part dependent upon certain contingencies does not prevent a contract from arising, and the employing governmental body may not deny or impair the contingent liability any more than it can refuse to make the salary payments which are immediately due. Clearly, it cannot do so after all the contingencies have happened, and in our opinion it cannot do so at any time after a contractual duty to make salary payments has arisen, since a part of the compensation which the employee has at that time earned consists of his pension rights.'' (See *Holt* v. *Board of Police etc. Commrs.*, 86 Cal.App.2d 714 [196 P.2d 94] ; *Hunter* v. *Sparling*, 87 Cal.App.2d 711 [197 P.2d 807].)

The method of enacting a law is set forth in the Constitution, article IV, section 16. Unless the Constitution provides to the contrary the Legislature indicates the effective date of acts. The same rule applies to the legislative bodies governing municipalities or counties unless restricted by charter provision (Gov. Code, § 25127), which does not appear to be the case in this proceeding. Except in Election Code provisions ''. . . no ordinance passed by the board shall take effect within less than 30 days after its passage.'' (Gov. Code, § 25123, based on former Pol. Code, § 4057.)

In *Board etc. Trustees* v. *Board of Supervisors*, 99 Cal. 571 [34 P. 244], Orange County accepted by ordinance the advantages of an act of the Legislature to establish a law

library. The act provided that suitable room for such library should be provided by the board of supervisors. Suitable space was not provided and there was an attempt to repeal the ordinance. At page 573 the court said, "It is also plain that the attempted repeal of the ordinance declaring Orange County within the provisions of the act was of no avail. When Orange County once came within the provisions of the act, it was there for all purposes; as fully and completely there, as if it had passed directly under its provisions at the date of the original enactment. We do not perceive how it can evade the force and effect of the statute of the state (which, after the passage of ordinance No. 14, applied to it) in any different manner or to any greater extent than it can escape the force and effect of any other statute of the state."

After a law becomes effective its operation may be postponed if it is dependent upon a contingency which may occur in the future—for instance upon the starting of a new term of office—if the Constitution or a statute so provides, but in the present matter no such contingency was imposed. Petitioner could receive his rights under the retirement system in view of the suspension of the provisions of article XI, section 5, of the Constitution without waiting for a new term of office to begin. The ordinance was a "perfect law." (*County of Los Angeles* v. *Lamb,* 61 Cal. 196.) There is nothing in *Callahan* v. *City and County of San Francisco,* 68 Cal.App.2d 286 [156 P.2d 479], that holds to the contrary. In the Callahan case the proposed amendment to the charter provided that it "shall become *effective*" (italics added) upon a contingency that was not a mere selection of an arbitrary date but rather upon a contingency with a sound basis—when funds would be available within a given period.

In the present case "the time of vesting" was November 20, 1947, without legal restraint. After that time petitioner was privileged to avail himself of the benefits of the retirement system.

Let a permanent writ of mandate issue commanding respondents to accept the legally fixed contribution of petitioner to the Alameda County Employees' Retirement Association and to accord him the privileges and benefits therein provided.

Peters, P. J., and Bray, J., concurred.