[Crim. No. 3565. Fifth Dist. Mar. 4, 1980.]

THE PEOPLE, Plaintiff and Respondent, v.
ELOY DURAN HINOJOSA, Defendant and Appellant.

58

COUNSEL

Paul Halvonik and Quin Denvir, State Public Defenders, under appointment by the Court of Appeal, Ezra Hendon, Chief Assistant State Public Defender, Mark L. Christiansen and Christine M. Zilius, Deputy State Public Defenders, for Defendant and Appellant.

Evelle J. Younger and George Deukmejian, Attorneys General, Jack R. Winkler, Chief Assistant Attorney General, Arnold O. Overoye, Assistant Attorney General, W. Scott Thorpe and Jana L. Tuton, Deputy Attorneys General, for Plaintiff and Respondent.

OPINION

BALLANTYNE, J.*—

### STATEMENT OF THE CASE

Appellant stands convicted, following a jury trial, of selling more than one-half ounce of a substance containing heroin (Health & Saf. Code, § 11352). The trial judge denied probation and sentenced appellant to state prison for the term prescribed by law. On appeal, the sole issue is the propriety of the indeterminate sentence imposed by the trial court. At sentencing on December 21, 1977, defense counsel urged the

*Assigned by the Chairperson of the Judicial Council.

judge to impose the lower term under the determinate sentencing law, but the court refused and instead imposed an indeterminate sentence, under the law as applicable to appellant's case. Appellant thus became subject to the jurisdiction of the Community Release Board (CRB), which would set his term pursuant to Penal Code section 1170.2, subdivision (a), at the middle term of four years. Appellant contends the trial court's refusal to give him a determinate sentence was prejudicial because it deprived him of the chance to present evidence of mitigating circumstances which might have reduced his term by one year. He further contends that his sentence was an ex post facto application of the law. For the reasons discussed below, we reject appellant's contentions.

## DISCUSSION

Appellant was sentenced on December 21, 1977, for an offense committed on April 12, 1977. At the time of sentencing, the determinate sentencing law, as enacted in 1976,[1] and amended in 1977,[2] had become "effective" and "operative." However, the sentencing judge apparently concluded that the provisions for indeterminate sentencing in the new sentencing law, *as amended in 1977*, governed appellant's case, because his offense was committed prior to July 1, 1977.[3]

Appellant contends the trial judge should have given him a determinate sentence because he was entitled to be sentenced under the 1976 act which he asserts was effective on the date of his offense, April 12, 1977. The version of the new sentencing law enacted as of that date was

---

[1]Senate Bill No. 42, 1975-1976 Regular Session, and Senate Bill No. 15, 1977-1978 Regular Session, are collectively referred to as the 1976 act herein.

Senate Bill No. 42 (Stats. 1976, ch. 1139, § 273) was *effective January 1, 1977*, under article IV, section 8 of the state Constitution, but *not operative until July 1, 1977* (Stats. 1976, ch. 1139, § 351.5).

Senate Bill No. 15 (Stats. 1977, ch. 2, § 2) was urgency legislation *effective on December 16, 1976*, but *not operative until July 1, 1977*.

[2]We will refer to Assembly Bill No. 476, 1977-1978 Regular Session, as the 1977 amendment.

[3]As amended by Statutes of 1977, chapter 165, section 15, Penal Code section 1170, subdivision (a)(2), provides in pertinent part: "In any case in which the punishment prescribed by statute...is...[one of three specified time periods], the court shall sentence the defendant to one of the terms of imprisonment specified unless such convicted person...is sentenced pursuant to subdivision (b) of section 1168 *because he had committed his crime prior to July 1, 1977.*" (Italics added.) Sentencing under this provision in the new law is still indeterminate because under section 1168, subdivision (b), the sentencing judge does not fix the term or duration of imprisonment.

Senate Bill No. 42 (hereinafter referred to as SB 42), as amended by Senate Bill No. 15 (hereinafter referred to as SB 15), but without the 1977 amendment filed and effective June 29, 1977. Under the determinate sentencing law as it existed prior to the 1977 amendment, the *sentencing date* was conclusive in deciding whether a defendant would receive a determinate sentence from the sentencing judge or be sentenced indeterminately under Penal Code section 1168. If sentencing occurred after July 1, 1977, the 1976 act called for a determinate sentence (Stats. 1977, ch. 2, § 2). The 1977 amendment changed this critical date from the time of sentencing to the date of the offense (see *People* v. *Martinez* (1979) 88 Cal.App.3d 890, 896, fn. 11 [152 Cal.Rptr. 204]; *People* v. *Superior Court* (*Gonzales*) (1978) 78 Cal. App.3d 134, 140 [144 Cal.Rptr. 89]). Appellant asserts he acquired a vested right to a determinate sentence to be imposed by the trial judge under the 1976 version of the act.[4] He contends the 1977 amendment, filed and effective June 29, 1977, which was after his offense, could not operate retroactively to deprive him of this vested right.

Respondent contends appellant was properly sentenced under Penal Code section 1170, subdivision (a)(2), as amended in 1977, because the earlier versions of the determinate sentencing law enacted in 1976 never became operative before the 1977 amendment was filed and effective (see fn. 1, *ante*). Thus, the pivotal question in this appeal is whether appellant's rights would vest under the 1976 act *after the effective date* of that legislation, January 1, 1977, but *before its operative date*, July 1, 1977. Hence, the essential disagreement between the parties concerns the impact of the 1976 act during the interim period between its effective and operative dates.

This is a question of first impression within the context of the determinate sentencing law. However, several reported decisions have discussed, in other contexts, the unusual situation where legislation becomes effective on one date, but its operative date is postponed.

■ We recognize that it has long been established that "'[a] legislative act cannot become operative until it has become a law, but the time when it becomes operative may be much later than the date when it becomes a law.'" (*Cline* v. *Lewis* (1917) 175 Cal. 315, 318 [165 P. 915].) In addition, a number of opinions by the Attorney General have noted

---

[4]He argues he had constructive notice under the 1976 act in effect at the time of the offense, that if *sentenced* after July 1, 1977, he would receive a determinate sentence.

that a statute may be in "effect" as a law, yet not be operative as to its substantive provision or obligation. (See, e.g., 15 Ops.Cal.Atty.Gen. 30, 32 (1950); 57 Ops.Cal.Atty.Gen. 451, 454 (1974).)

Appellant relies primarily on a line of authority holding that the vesting of rights under a county ordinance establishing a retirement system occurred on the effective date of the legislation, rather than the operative date (*Ross* v. *Board of Retirement* (1949) 92 Cal.App.2d 188, 193 [206 P.2d 903]; *Thurston* v. *County of Los Angeles* (1953) 117 Cal.App.2d 618, 621 [256 P.2d 588]; *Wilson* v. *Board of Retirement* (1957) 156 Cal.App.2d 195, 205 [319 P.2d 426]). While it is true that in each of these cases it was held that the effective date of the ordinance rather than the operative date, was the controlling date for the vesting of rights, we do not think that *Ross* and its progeny need be viewed as establishing a blanket rule that the effective date is always controlling over the operative date, insofar as the vesting of rights under new legislation. In each of those cases the court was obviously concerned with giving effect to the particular purpose behind the legislation it considered, i.e., to extend benefits to public officers or employees; the legislative intent would have been thwarted in those cases if the court had held the rights would vest only upon the operative date.

Appellant also relies on language from *DeWoody* v. *Superior Court* (1970) 8 Cal.App.3d 52 [87 Cal.Rptr. 210] and *People* v. *Righthouse* (1937) 10 Cal.2d 86 [72 P.2d 867] to the effect that: "*In relation to the ex post facto restriction, we have concluded that the statute was passed* not when the Governor signed it but *when it became an effective law.* Where the Legislature amends a criminal law without specifying an effective date, it does so in contemplation of the effective date fixed by the State Constitution. (*People* v. *Righthouse* (1937) 10 Cal.2d 86, 88. . . .) Until the effective date, the law-making power (including the people acting under the referendum) has not exercised a final choice in the matter. '[A] statute has no force whatever until its goes into effect pursuant to the law relating to legislative enactments. *It speaks from the date it takes effect* and not before. Until that time it is not a law and has no force for any purpose.' (*Ibid.*, p. 88.)" (*DeWoody* v. *Superior Court, supra,* 8 Cal.App.3d at p. 56, italics added.) Although the underscored language in the above quote suggests that the effective date of legislation is controlling for the purposes of the ex post facto restriction, neither *DeWoody* nor *Righthouse* dealt with a situation where the Legislature specifically provided an operative date later than the ef-

fective date. Consequently, these cases are not dispositive of the issue herein.

Respondent contends that although SB 42, the 1976 version of the Determinate Sentencing Act, became effective as law on January 1, 1977, pursuant to article IV, section 8, of the California Constitution, the law had no force until the operative date expressly provided by the Legislature. Respondent relies on a line of authority in which the Legislature acted to increase the compensation for elected officials. Although the law increasing the compensation was in effect during the incumbents' terms, it had no force until a successor was elected, because an incumbent may only receive compensation provided by the law in force at the date he was elected. (See, e.g., *Smith* v. *Mathews* (1909) 155 Cal. 752, 757 [103 P. 199]; *Cline* v. *Lewis, supra,* 175 Cal. 315, 318-319.) These cases do not really elucidate on the meaning of the effective and operative dates in the present context, because the consideration underlying the holdings in the cited cases was that there was no subject matter on which the new law could properly operate until the incumbent's term had ended.

Respondent also quotes language from recent Court of Appeal decisions describing the effect of the determinate sentencing law in language favorable to the People's position (e.g., *People* v. *Superior Court (Gonzales), supra,* 78 Cal.App.3d 134; *People* v. *Alcala* (1977) 74 Cal.App.3d 425 [141 Cal.Rptr. 442]). There is language in these cases to the effect that the Legislature intended "that for defendants sentenced after July 1, 1977, for offenses committed prior thereto, the term of imprisonment be fixed by CRB, not by the trial court." (*People* v. *Superior Court (Gonzales), supra,* 78 Cal.App.3d at p. 140.) However, this does not assist us because the *Alcala* and *Gonzales* courts were concerned with the legislative intent of the 1977 amendment, not the effect of the original 1976 act. Both Alcala and Gonzales had committed their offenses before the 1976 act took effect in January 1, 1977, so that the question of the possible effect of the 1976 act on their cases was not at issue. The courts in *Alcala* and *Gonzales* simply did not consider the case of a person who committed an offense between January 1, 1977, the effective date of the 1976 act and June 29, 1977, the effective date of the 1977 amendment. *Alcala* and *Gonzales* are not controlling here.

Moreover, neither side has cited any evidence of legislative history shedding light on the precise question of the Legislature's intent as to

the status of the 1976 act between its effective date and its operative date. Consequently, it is both appropriate and necessary for this court to ascertain the legislative intent from the Determinate Sentencing Act as a whole.

We commence our odyssey of interpreting the legislative intent mindful of certain basic rules of interpretation that will aid us in this task. ■ First, every word, phrase or provision is presumed to have meaning and perform a useful function (see 45 Cal.Jur.2d, Statutes, § 99, p. 613). ■ Second, it will be assumed that the Legislature, enacting a statute, was familiar with the common law rules, existing judicial decisions construing statutes and that it enacted the new statute in light of these precepts (including the prohibition against ex post facto laws) (*id.*, at § 101, p. 615). ■ Finally, the statute must be given a fair, reasonable and common sense interpretation and one that is practical rather than technical and that leads to a wise policy rather than to mischief or an absurdity (*id.*, at § 116, pp. 625-626).

The word "operative" is defined in Funk and Wagnalls Standard College Dictionary (1973) page 946 as "exerting force or influence." The operative date of July 1, 1977, was specified as early as SB 42 and appears to have been a device to delay the execution and consequences of a drastic new sentencing law, thus allowing everyone involved to "gear up" and get ready for the impact of the new law. We would likewise characterize each of the subsequent amendments to SB 42 as a further clarification of a legislative intent to postpone the consequences of the act. SB 15 clarifies the legislative intent that the act should begin operating on July 1, 1977, rather than January 1, 1977, by removing the words "effective date" in several places and substituting July 1, 1977, therefor. (Stats. 1977, ch. 2, § 2.) Moreover, the 1977 amendment, Assembly Bill No. 476, 1977-1978 Regular Session (hereinafter AB 476), may also be characterized as, in effect, a further postponement of the consequences of the act; by changing the July 1, 1977, cutoff date for the use of indeterminate sentences from the time of sentencing to the time of the offense, the Legislature further delayed the actual date when judges would begin imposing determinate sentences.

Because both SB 15 and AB 476 were enacted as urgency legislation, so that they became effective before the operative date of the original act, SB 42, it appears quite clear that the Legislature intended one uniform scheme to be executed and to take effect for all practical purposes on July 1, 1977. Moreover, one of the expressed purposes of the deter-

minate sentencing law is to achieve uniformity in sentencing, and as previously noted, it is readily apparent that the purpose of the delayed operative date was to effect a smooth transition. However, if appellant's contention were to be accepted, there would be a class of people who committed offenses between January 1, 1977, and June 29, 1977, who, if sentenced after July 1, 1977, would have been entitled to a determinate sentence, while those who committed offenses between June 29th and July 1st would receive indeterminate sentences.

Moreover, appellant's contention would sharply curtail the effect of the 1977 amendment. For if this court were to accept appellant's contention that the 1977 amendment had no effect on the former class of people, then the amendment would essentially only be effective as to people who committed offenses in the two-day period between June 29 and July 1, 1977.[5] It is difficult to conceive that the Legislature would enact an amendment, particularly as urgency legislation, to affect such a small class of people. Consequently, reason and logic dictate that the Legislature intended that the 1977 amendment would affect *all* those who committed their offenses prior to July 1, 1977, without carving out a group to be sentenced under the 1976 act as contended by appellant.

When the entire statutory scheme, including the amendments, is viewed together and harmonized (see 45 Cal.Jur.2d, Statutes, §§ 117, 118, pp. 626-627), it appears the Legislature intended that the amendment enacted as urgency legislation in the interim period between the effective and operative dates of the original act would negate conflicting provisions in the original act, so as to prevent them from ever having any effect whatsoever. Thus, it appears the 1976 act created no vested rights prior to its operative date of July 1, 1977, for those in appellant's situation. The law is clear that such a construction favorable to the validity and constitutionality of a statute should be adopted where possible, and every presumption is in favor of the validity of a statute and "it must be upheld unless its unconstitutionality clearly, positively and unmistakably appears." (*Way* v. *Superior Court* (1977) 74 Cal. App.3d 165, 178 [141 Cal.Rptr. 383]; see also 45 Cal.Jur.2d, Statutes, § 115, pp. 624-625.) Also, statutes must be given a reasonable and common sense construction in accordance with the apparent purpose and intention of the lawmakers—one that is practical rather than technical

[5]The 1977 amendment would also affect those who committed offenses before January 1, 1977, and who were granted probation, then resentenced after July 1, 1977, because probation had been revoked (*People v. Superior Court (Gonzales)*, *supra*, 78 Cal.App.3d 134).

and that will lead to a wise policy rather than to mischief or absurdity (*id.*, at § 116, pp. 625-626). Applying all of the foregoing rules of statutory construction, it is manifest that the legislative intent was that the 1976 act would not vest any rights prior to July 1, 1977. ■ Consequently, we hold that the 1977 amendment would be applicable to appellant without impairing any vested rights.

Turning to appellant's contention that application of the 1977 amendment would constitute an impermissible ex post facto law, appellant asserts that the retrospective application of that amendment would detrimentally change the punishment from that under the law in effect at the time of the offense, because the 1977 amendment deprives him of the opportunity to present mitigating circumstances and possibly receive the lower term of imprisonment. (As noted above, if he is given an indeterminate sentence, the CRB will automatically fix his term at the middle term.) Although the 1977 amendment does potentially "increase" the punishment for appellant's crime from the punishment provided under the 1976 act, the crucial question in determining whether application of the 1977 amendment to appellant's case constitutes an ex post facto law is whether appellant had any vested right to be sentenced under the 1976 act. Retrospective application of a law which does not operate to deprive the defendant of a vested right does not fall within the scope of the prohibition against an ex post facto law (see generally, 17 Cal.Jur.3d, Criminal Law, § 11, pp. 37-39). Having concluded appellant's rights under the new sentencing law did not vest until the operative date of July 1, 1977, it follows there was no ex post facto application of the law in this case.

The judgment is affirmed.

Brown (G. A.), P. J., and Hopper, J., concurred.

Appellant's petition for a hearing by the Supreme Court was denied April 30, 1980.