[Civ. No. 22974. Third Dist. Mar. 15, 1984.]

BETTYLEE JOHNSTON et al., Plaintiffs and Appellants, v.
DORIS ALEXIS, as Director, etc., Defendant and Respondent.

34

**COUNSEL**

Ronald A. Zumbrun and Anthony T. Caso for Plaintiffs and Appellants.

John K. Van de Kamp, Attorney General, N. Eugene Hill, Assistant Attorney General, and Geoffrey L. Graybill, Deputy Attorney General, for Defendant and Respondent.

## OPINION

**SIMS, J.**—In the court below, plaintiff class (plaintiffs), which consists of all persons whose vehicle registrations expired on December 31, 1981, and who paid their registration renewal fees on or before that date, argued defendant Department of Motor Vehicles (DMV)[1] illegally collected from plaintiffs new and increased renewal fees. Plaintiffs contended DMV was without legal authority to collect the fees before January 1, 1982. The parties filed cross-motions for summary judgment. The trial court denied plaintiffs' motion for summary judgment and entered summary judgment in favor of DMV. We conclude some fees were properly collected in 1981 and some were not. Accordingly, we reverse the summary judgment and remand to the trial court for further proceedings.

### FACTUAL AND PROCEDURAL BACKGROUND

Prior to the enactment in September of chapter 541 of the Statutes of 1981 (hereafter all chapter references are to the Statutes of 1981 unless otherwise indicated), total fees due for the registration of private and commercial vehicles consisted of the sum of several separate elements. One was a basic registration fee of $11 as set forth in Vehicle Code section 9250.[2] (Unless otherwise indicated, all statutory references are to the Vehicle Code.) Another element, applicable to commercial vehicles only, was a graduated fee depending on the weight of the vehicle. (§ 9400.)

Section 25 of chapter 541 increased the basic registration fee from $11 to $22.[3] Section 32 of chapter 541 increased the weight fees for commercial vehicles.[4]

Section 44 of chapter 541 provided, "This act [including sections 25 and 32] is an urgency statute necessary for the immediate preservation of the public peace, health, or safety within the meaning of Article IV of the

---

[1] Although the named defendant is Doris Alexis, the director of DMV, for purposes of clarity we will refer to DMV as the defendant in this action.

[2] Another element consisted of a vehicle license fee computed at 2 percent of the market value of the vehicle. (Rev. & Tax. Code, § 10752.) The license fee is not at issue in this litigation.

[3] Chapter 541, section 25 at page 2181 amended section 9250, subdivision (a) to provide in pertinent part: "A registration fee of twenty-two dollars ($22) shall be paid to the department for the registration of every vehicle or mobilehome of a type subject to registration, except as are expressly exempted under this code from the payment of registration fees."

[4] Chapter 541, sections 31 and 32 at page 2182 respectively repealed former section 9400 and added a new section 9400 which provided in relevant part: "In addition to any other registration fee, there shall be paid the fees set forth in this section for the registration of commercial vehicles."

Constitution and shall go into immediate effect. The facts constituting the necessity are: [¶] In order that an accurate estimate of funds available for transportation purposes may be made as soon as possible for transportation planning purposes by the state and by local and regional entities, it is necessary that this act take effect immediately." (Ch. 541, § 44, p. 2187.) The legislation was signed by the Governor and filed with the Secretary of State of September 17, 1981. (Ch. 541, p. 2167.)

However, section 43 of chapter 541 at page 2187 provided the increases in the basic registration and commercial weight fees "shall become operative on January 1, 1982."

In 1981, the Legislature also added a new fee required for the registration of vehicles. Chapter 933 added sections 9250.8 and 9250.9 to the Vehicle Code; these new sections provided for a $1 addition to the registration fee to be used to increase the uniformed field strength of the California Highway Patrol.[5] New section 9250.8 explicitly specified the additional $1 fee for the Highway Patrol "shall be paid at the time of registration or renewal of registration of every vehicle beginning January 1, 1982, . . ." (See fn. 5, *ante.*)

However, the new Highway Patrol fee was also enacted as an urgency measure: "This act is an urgency statute necessary for the immediate preservation of the public peace, health, or safety within the meaning of Article IV of the Constitution and shall go into immediate effect. The facts constituting the necessity are: [¶] In order to increase the number of on view California Highway Patrol enforcement units as a greater deterrent to potential law violators, and to enhance the total enforcement activities of the California Highway Patrol including placing increased emphasis on the needs of the motoring public, thus resulting in a balanced and versatile traffic safety program which deals with driver, vehicle, and use of the state highway system in the 1981-82 fiscal year, it is necessary that this bill take effect immediately." (Ch. 933, § 5, pp. 3521-3522.)

---

[5]Chapter 933, section 2, at page 3521 added section 9250.8. Subdivision (a) of new section 9250.8 provided: "In addition to any other fees specified in this code and the Revenue and Taxation Code, a fee of one dollar ($1) *shall be paid at the time of registration or renewal of registration of every vehicle beginning January 1, 1982, and ending December 31, 1985,* except those vehicles that are expressly exempted under this code from the payment of registration fees." (Italics added.)

Chapter 933, section 3 at page 3521 added section 9250.9. Subdivision (a) of new section 9250.9 provided: "All fees received by the department pursuant to Section 9250.8 shall be deposited in the California Highway Patrol Law Enforcement Account in the State Transportation Fund, which is hereby created. The money in that account shall be available upon appropriation by the Legislature for expenditure to increase the uniformed field strength of the Department of the California Highway Patrol, to the extent that revenue is increased."

Pursuant to sections 1651.5 and 4601, DMV registers vehicles on a staggered system whereby the registration years of vehicles expire on different days of the different months of the year. (See generally *Halford* v. *Alexis* (1981) 126 Cal.App.3d 1022, 1024-1025 [179 Cal.Rptr. 486].) Thus, the registration year is not the same for all vehicles. Rather, California vehicles are divided into numerous groups, so that, for example, the registration year for one group may run from May 8 of one year to May 8 of the next year, or from October 24 of one year to October 24 of the next year, and so forth. There is no necessary correlation between a vehicle's registration year and the calendar year.

Plaintiffs are the owners of vehicles, including commercial vehicles, whose registration years ran from January 1, 1981, through December 31, 1981. Their registrations expired at midnight on December 31, 1981. By law, plaintiffs were required to renew their registrations before expiration. (§§ 4601, 4602.) At the time of renewal, however, plaintiffs were charged registration fees calculated pursuant to the provisions of chapter 541, "operative" on January 1, 1982, and also pursuant to chapter 933, which had an express commencement date of January 1, 1982. As noted, the trial court found DMV properly charged plaintiffs the increased fees and entered judgment in favor of DMV.

DISCUSSION

I

*Chapter 541*

Plaintiffs claim they were illegally charged the increased registration fees provided by chapter 541 because the laws increasing those fees were not operative at the time plaintiffs were required to and did in fact pay their renewal fees.

A

■ DMV contends we need not address the apparent conflict between the "effective" and "operative" dates of chapter 541. DMV argues plaintiffs were not legally obligated to pay renewal fees until January 1, 1982, when chapter 541 was "operative."

Contrary to DMV's contention, plaintiffs are correct that they were required to renew their registration prior to the expiration of their existing registration year. Section 4601 provides: "Except as otherwise provided in this code, every vehicle registration and registration card expires at mid-

night on the expiration date designated by the director pursuant to Section 1651.5, *and shall be renewed prior to the expiration of the registration year. The department may, upon payment of the proper fees, renew the registration of vehicles.*" (Italics added.)

Section 4602 provides: "*Application for renewal of a vehicle registration shall be made by the owner not later than midnight of the expiration date,* and shall be made by presentation of the registration card last issued for the vehicle or by presentation of a potential registration card issued by the department for use at the time of renewal *and by payment of the full registration year fee for the vehicle as provided in this code.*" (Italics added.)

The foregoing makes manifest plaintiffs were required to renew their vehicle registrations and pay their registration fees before midnight, December 31, 1981. This analysis is buttressed by the fact that had plaintiffs failed to pay their registration renewal fees (whatever they lawfully were) prior to the December 31 deadline, they would have been assessed a late payment penalty (§§ 9553, 9554), which, together with the renewal fee, would have constituted liens against their vehicles. (§ 9800.)

DMV argues plaintiffs were properly charged the increased registration fees because plaintiffs were not liable for such fees until after the operative date of the increases. Relying on sections 4604[6] and 9708,[7] DMV claims the duty to pay a registration fee does not arise until operation of the vehicle in the new registration year. We disagree.

DMV's argument renders meaningless (1) the clear language of sections 4000, 4601 and 4602 that fees must be paid *prior* to use of the vehicle on the roads and prior to the expiration of the vehicle's registration year, and (2) sections 9553 and 9554 which impose a penalty upon the failure to renew

---

[6]Section 4604 states: "When the registration of a vehicle has expired and the vehicle is not thereafter operated, moved, or left standing upon any highway, then any application for renewal made subsequent to the expiration of the registration and for succeeding registration years in which the vehicle has not been registered shall be accompanied by a certificate of nonoperation. The application for renewal of registration, whether or not accompanied by an application for transfer of any title or interest therein, shall be received by the department upon payment of the proper fees for the current registration year and without penalty for delinquent payment of fees imposed under this code . . . provided, that the department receives the application and certificate of nonoperation within 20 days after the date the vehicle is first operated, moved, or left standing upon any highway during the current registration year."

[7]Section 9708 states "When the registration of any vehicle expires and the vehicle is not thereafter operated, moved, or left standing upon the highways, any subsequent application for partial year registration, or renewal thereof, shall be accompanied by a certificate of nonoperation. The department shall not collect any penalty imposed by this code upon receipt of the application and certificate within 20 days after the date the vehicle is first operated, moved, or left standing upon the highways."

a vehicle registration on time. Sections 4604 and 9708 are obviously designed to deal with a situation where registration on an inoperable or garaged vehicle has been allowed to lapse but is subsequently renewed. Sections 4604 and 9708 therefore constitute an exception to the general rule requiring renewal prior to the expiration of the current registration by providing that a late payment penalty will not be imposed in the unusual situation where a vehicle has not been operated, moved or left standing on a highway. These sections do not, however, alter the usual owner's legal duty to renew his or her registration by midnight of the end of the current registration year.

B

Since we have concluded that plaintiffs were legally obligated to pay their increased registration fees before midnight on December 31, 1981, we turn to the problem presented by the superficially conflicting "effective" and "operative" dates of the legislation. While chapter 541 was an urgency measure and thus effective immediately in September 1981 (Cal. Const., art. IV, § 8, subd. (c)(2)), the Legislature delayed the "operative" date of the increased registration fees to January 1, 1982. (Ch. 541, § 43, p. 2187.)

"It has long been recognized that a statute may legally be framed to provide for an effective date and an operative date. (*County of Los Angeles* v. *Lamb* (1882) 61 Cal. 196, 198; *Cline* v. *Lewis* (1917) 175 Cal. 315, 318 [165 P. 915]; *Callahan* v. *City & County of S.F.* (1945) 68 Cal.App.2d 286, 290 [156 P.2d 479]; *People* v. *Hinojosa* (1980) 103 Cal.App.3d 57, 61-62 [162 Cal.Rptr. 793]; *People* v. *Henderson* (1980) 107 Cal.App.3d 475, 488 [166 Cal.Rptr. 20] see also 15 Ops.Cal.Atty.Gen. 30, 32 (1950); 26 Ops.Cal.Atty.Gen. 141, 143 (1955); 57 Ops.Cal.Atty.Gen. 451, 454 (1974).) In the usual situation, the effective date and the operative date are one and the same; however, the power to enact laws includes the power to fix a future date on which the act will become operative. (See 2 Sutherland, Statutory Construction (4th ed. 1973) § 33.07, pp. 11-12.)" (*Estate of Rountree* (1983) 141 Cal.App.3d 976, 980, fn. omitted [192 Cal.Rptr. 152].)

The consequences attaching to an "effective" date and to an "operative" date of legislation are not the same. "It has been uniformly held in this state that a statute has no force whatever until it goes into *effect* pursuant to the law relating to legislative enactments. It speaks from the date it takes *effect* and not before. Until that time it is not a law and has no force for any purpose. [Citations.]" (*People* v. *Righthouse* (1937) 10 Cal.2d 86, 88 [72 P.2d 867], italics added.)

By way of contrast, the courts have, on occasion, allowed legislation (once effective) to have practical legal consequences in advance of an "operative" date.[8] Thus, for example, in *Ross* v. *Board of Retirement* (1949) 92 Cal.App.2d 188 [206 P.2d 903], the auditor of Alameda County sued in mandate to compel membership in the Alameda County Employee's Retirement Association. The county's ordinance establishing its retirement system was adopted pursuant to and in accordance with the County Employees Retirement Law of 1937 (then Gov. Code, § 31450 et seq.). (*Ross, supra,* at pp. 190-191.) A section of the statewide retirement law (then Gov. Code, § 31501) provided it would become "operative" in any county on either January 1 or July 1 following the adoption of a local ordinance but not sooner than 60 days after such adoption. (*Ross, supra,* at p. 191.) Alameda County adopted its local retirement ordinance on October 21, 1947, made it effective on November 20, 1947, and made it "operative" on January 1, 1948. (*Ibid.*) Concluding that the "operative" date of January 1, 1948, (provided by both the statewide legislation and the county's ordinance) was "merely a date of convenience to the officers in charge of the retirement system for bookkeeping, retirement or other reasons" (*id.,* at p. 193), the court held the auditor's rights in the retirement system vested on the effective date of the ordinance—November 20, 1947. (*Id.,* at p. 195.) *Ross'* rationale has been followed in subsequent retirement cases. (See *Wilson* v. *Board of Retirement* (1957) 156 Cal.App.2d 195, 205 [319 P.2d 426]; *Thurston* v. *County of Los Angeles* (1953) 117 Cal.App.2d 618, 621 [256 P.2d 588].)

*Ross* and its progeny impliedly recognize that a provision in legislation delaying the "operative" date is simply a component of a statute subject to the usual rules of statutory construction and interpretation. Thus, in determining the practical legal effect to be given an enactment that contains different "effective" and "operative" dates, recent cases have been concerned with ascertaining and promoting the legislative intent of the enactment. (*Estate of Nicoletti* (1982) 129 Cal.App.3d 475, 480 [181 Cal.Rptr. 137]; see *Tevis* v. *City & County of San Francisco* (1954) 43 Cal.2d 190, 195 [272

---

[8]In *People* v. *Henderson* (1980) 107 Cal.App.3d 475 [166 Cal.Rptr. 20], we had occasion to construe legislation (Stats. 1977, ch. 164, § 3) providing a mechanism to extend the commitments of mentally disordered sex offenders (MDSO). The MDSO legislation contained different "effective" and "operative" dates, as did the newly enacted determinate sentencing law (DSL). (Stats. 1976, ch. 1139, § 351.5; Stats. 1977, ch. 164, §§ 3, 6, 7; *Henderson, supra,* at p. 487.)

Rejecting defendant's claim that the new MDSO legislation constituted an ex post facto law, we concluded defendant had no vested rights under the not-then-operative DSL because, "An enactment is a law on its effective date only in the sense that it cannot be changed except by legislative process; the rights of individuals under its provisions are not substantially affected until the provision operates as law." (*Henderson, supra,* 107 Cal.App.3d at p. 488.) We have no reason to question *Henderson's* conclusion with respect to laws providing for criminal punishments; this is not such a case.

P.2d 757]; *Estate of Rountree, supra,* 141 Cal.App.3d at p. 980; *People* v. *Hinojosa* (1980) 103 Cal.App.3d 57, 62 [162 Cal.Rptr. 793], and authorities cited therein.)

█  In ascertaining the Legislature's intent in enacting sections 25 and 32 of chapter 541, we examine the language of the enactment in the context of the entire statutory scheme.[9] (*People* v. *Hinojosa, supra,* 103 Cal.App.3d at p. 65.)

█  Sections 25 and 32 simply raised fees "for the registration" of vehicles. (See fns. 3, 4, *ante.*) The sections are vague with respect to what plaintiffs got for the fees they paid. However, other sections make clear that the increased fees were for the purpose of registering plaintiffs' vehicles *for the registration year.* Thus, section 4601 requires renewal "prior to the expiration of the registration year." And section 4602 requires payment of "the full registration year fee . . . ." (See also §§ 4604, 5903.) Because plaintiffs' registration year expired December 31, 1981, the fees they paid in December were for the registration year commencing January 1, 1982, (see § 4602) when the increased fees were "operative." In short, we conclude that the Legislature, by providing for an "operative" date of January 1, 1982, simply intended to raise fees for "registration years" commencing January 1, 1982, and that plaintiffs were properly charged these fees for their registration year of January 1, 1982, through December 31, 1982. A contrary conclusion would mean that, even though increased fees for the registration year January 1, 1982, through December 31, 1982, were "operative" on January 1, 1982, owners timely renewing vehicle registrations subject to that registration year would be exempt from payment of the increased fees, whereas those operating vehicles for the first time on January 1, 1982, and assigned the same registration year as plaintiffs, would pay them.[10] (See §§ 4000, 4150, 9250, 9400.) █ "[S]tatutes must be given

---

[9]Unhappily, we do not find the urgency clause helpful. That clause provides for immediate effectiveness "In order that an accurate estimate of funds available for transportation purposes may be made as soon as possible for transportation planning purposes . . . ." (Stats. 1981, ch. 541, § 44, p. 2187.) The desirability of an accurate estimate of funds to be received in the future does not shed light on whether fees should be charged beginning in December or in January; presumably, either month would give planning agencies adequate time to calculate future fees.

Vehicle registration fees collected pursuant to section 9250 end up in the Motor Vehicle Account of the State Transportation Fund (§ 42271) or, upon order of the Controller in the event of a monthly surplus, in the State Highway Account of the State Transportation Fund. (§ 42273.) Commercial weight fees collected pursuant to section 9400 are deposited with the State Treasurer, who, on order of the Controller, shall deposit the money in the State Highway Account. (§ 42205.)

[10]Pursuant to Evidence Code sections 452, subdivision (h) and 459, we take judicial notice of the DMV's Manual of Registration Procedures in effect at the time of the registration transactions in question. That manual indicates that the registration year assigned a new vehicle by DMV commences on the day the vehicle is first operated.

a reasonable and common sense construction in accordance with the apparent purpose and intention of the lawmakers—one that is practical rather than technical and that will lead to a wise policy rather than mischief or absurdity [citation]." (*People* v. *Hinojosa, supra,* 103 Cal.App.3d at pp. 65-66.)

The trial court properly concluded plaintiffs' attack on DMV's collection of fees under chapter 541 was without merit.

## II

### *Chapter 933*

As noted, chapter 933 added section 9250.8 to the Vehicle Code.[11] Subdivision (a) of section 9250.8 states in relevant part: "In addition to any other fee specified in this code and the Revenue and Taxation Code, *a fee of one dollar ($1) shall be paid at the time of* registration or *renewal of registration of every vehicle beginning January 1, 1982,* and ending December 31, 1985, . . ." (Italics added.)

Chapter 933 is different from chapter 541 in an important respect. Chapter 541 used a delayed "operative" date to accomplish its purpose; as we have seen, that unfortunate legislative technique required us to resort to statutory interpretation in order to resolve the ambiguity inherent in the use of the delayed "operative" date. Chapter 933, by way of contrast, contains no delayed "operative" date; rather, the times at which acts are to be undertaken are clearly spelled out in the statute itself.

In ascertaining the meaning to be given a statute, we turn first to the language of the enactment. (*Moyer* v. *Workmen's Comp. Appeals Bd.* (1973) 10 Cal.3d 222, 230 [110 Cal.Rptr. 144, 514 P.2d 1224].) Where statutory language is clear and unambiguous there is no need for construction, and courts should not indulge in it. (*Atlantic Richfield Co.* v. *Workers' Comp. Appeals Bd.* (1982) 31 Cal.3d 715, 726 [182 Cal.Rptr. 778, 644 P.2d 1257].)

We read section 9250.8, subdivision (a) unambiguously to require that a fee of one dollar be paid at the time of renewal of registration of every vehicle beginning January 1, 1982. We cannot and will not invent ambiguity where none exists. Since plaintiffs were required to, and did, renew their vehicle registrations before January 1,

[11]Like chapter 541, chapter 933 was an urgency statute and thus effective immediately upon approval by the Governor. (Stats. 1981, ch. 933, § 2, p. 3521, eff. Sept. 29, 1981.)

1982, DMV improperly collected from them the one dollar fee imposed by section 9250.8.[12]

We shall reverse the summary judgment entered in favor of DMV. On remand, the trial court shall enter an order specifying that the following issues are without substantial controversy pursuant to Code of Civil Procedure section 437c, subdivision (f) (see 6 Witkin, Cal. Procedure (2d ed. 1971) Appeal, § 546, p. 4487):

1. That DMV properly collected from plaintiffs increased registration and commercial weight fees, pursuant to sections 9250 and 9400 (enacted by §§ 25 and 32 of ch. 541, Stats. of 1981) when plaintiffs renewed their vehicle registrations;

2. That DMV wrongfully and without legal authority collected from plaintiffs the one dollar fee imposed by section 9250.8 (enacted by Stats. 1981, ch. 933, § 2) when plaintiffs renewed their vehicle registrations and plaintiffs are entitled to a refund of such fees.

#### DISPOSITION

The judgment is reversed. The matter is remanded to the trial court for further proceedings consistent with this opinion.

Puglia, P. J., and Sparks, J., concurred.

A petition for a rehearing was denied April 10, 1984, and the petitions of all the parties for a hearing by the Supreme Court were denied May 17, 1984.

---

[12]" 'It is assumed that the Legislature has in mind existing laws when it passes a statute. [Citations.]' " (*Bailey* v. *Superior Court* (1977) 19 Cal.3d 970, 977, fn. 10 [140 Cal.Rptr. 669, 568 P.2d 394], quoting *Estate of McDill* (1975) 14 Cal.3d 831, 837 [122 Cal.Rptr. 754, 537 P.2d 874].) Accordingly, we presume the Legislature knew of the legislative scheme requiring those with registration years of January 1, 1982—December 31, 1982, to renew before 1982. (See discussion in part I-A, *ante.*) Nonetheless, the Legislature clearly specified that the one dollar fee be paid "at the time of . . . renewal of registration . . . beginning January 1, 1982, . . ." (§ 9250.8, subd. (a).)