[Civ. No. 18260. Third Dist. May 1, 1980.]

LEAGUE TO SAVE LAKE TAHOE, Plaintiff and Appellant, v.
TAHOE REGIONAL PLANNING AGENCY,
Defendant and Respondent;
ROBERT GARDNER, as Director, etc., et al., Real Parties in Interest.

**COUNSEL**

Laurens H. Silver for Plaintiff and Appellant.

Owen & Rollston and Kenneth C. Rollston for Defendant and Respondent.

Michael Smiley Rowe, District Attorney, David M. Norris, Deputy District Attorney, and Steven D. McMorris for Real Parties in Interest.

OPINION

**PUGLIA, P. J.**—The League to Save Lake Tahoe (plaintiff) is a nonprofit, public benefit, membership corporation organized under the laws of California. Its name is descriptive of its purpose. The defendant Tahoe Regional Planning Agency (TRPA) is a bistate entity with jurisdiction to plan and regulate land use, transportation, conservation, recreation and public services and facilities in the Lake Tahoe basin. TRPA was created by congressional ratification of the Tahoe Regional Planning Compact between California and Nevada. (See *People* ex rel. *Younger* v. *County of El Dorado* (1971) 5 Cal.3d 480 [96 Cal.Rptr. 553, 487 P.2d 1193].)

By its first amended complaint and petition for mandamus, plaintiff challenged the decision by TRPA to grant Douglas County, Nevada, a permit for a road construction project. TRPA's demurrer thereto was sustained without leave to amend on the basis, inter alia, that the trial court lacked jurisdiction of the subject of the action. Plaintiff appeals from the subsequent judgment of dismissal. We shall affirm.

In 1973, Douglas County adopted a traffic plan calling for a four-lane road around the perimeter of the hotel-casino area on the Nevada side of the state line at the south end of Lake Tahoe. Described as a loop road, it was designed to provide access to the existing casinos and to two highrise hotel-casinos for which construction permits had recently been issued. In 1975, TRPA adopted as part of its general plan certain road improvements including a "two-lane loop around the existing casino-motel Stateline area connecting new alignment in Nevada with existing and extended city streets in California."

Nothing further was done until 1978 when Douglas County applied to TRPA for a permit to construct the Nevada portion of the loop road. Pursuant to its land-use ordinance, TRPA held a hearing on Douglas County's application in March 1978 at its offices in South Lake Tahoe, California. Despite some evidence of adverse environmental impacts in California, TRPA approved the Douglas County proposal. The approved proposal embraces a partial loop road situated entirely in Douglas County, Nevada, terminating at the California border but not connecting with any existing or planned roadways in this state.

Thereafter, plaintiff filed its complaint and petition for mandate naming TRPA as respondent. The first amended version thereof names

Douglas County, its public works director, Robert Gardner, and the contractors hired for construction of the loop road as real parties in interest. The first amended complaint sought to enjoin construction and to compel TRPA to set aside its approval of Douglas County's application, alleging that TRPA failed to make certain findings required by its land-use ordinance and that its approval violated land coverage limitations contained in its land-use ordinance.

The real parties in interest all moved to quash service of summons for lack of personal jurisdiction. The motions to quash and TRPA's demurrer to the complaint and petition for mandamus were argued and submitted on August 3, 1978. On August 14, 1978, the trial court sustained without leave to amend TRPA's demurrer, inter alia, for lack of subject matter jurisdiction and granted the motions of real parties in interest to quash service of summons. On October 13, 1978, judgment of dismissal with prejudice was entered in favor of TRPA. On December 7, 1978, plaintiff filed its notice of appeal from "the whole of the judgment entered in this action against the [plaintiff] and in favor of [TRPA]."

## I.

Plaintiff contends the Tahoe Regional Planning Compact confers jurisdiction of the subject of the action upon the superior court. If California courts have extraterritorial jurisdiction to review TRPA's approval of a road construction project located entirely in Nevada, it must necessarily derive from the compact, the provisions of which are found in Government Code section 66801. Judicial jurisdiction is dealt with in article VI(b) of the compact which provides: "All ordinances, rules, regulations and policies adopted by [TRPA] shall be enforced by [TRPA] and by the respective states, counties and cities. The appropriate courts of the respective states, each within its limits of territory and subject matter provided by state law, are vested with jurisdiction over civil actions to which [TRPA] is a party and criminal actions for violations of its ordinances. Each such action shall be brought in a court of the state where the violation is committed or where the property affected by a civil action is situated, unless the action is brought in a federal court. For this purpose, [TRPA] shall be deemed a political subdivision of both the State of California and the State of Nevada."

Properly parsed, article VI(b) provides discrete bases for state court jurisdiction in civil and criminal cases. In civil cases to which the TRPA

is a party, the action shall be brought in a court of the state where the property affected is situated. In criminal cases involving violations of TRPA's ordinances, the action shall be brought in a court of the state where the violation is committed. The locus of a violation as an incident conferring state court jurisdiction is significant only in relation to criminal actions. Contrary to plaintiff's theory, the phrase "for violations of its ordinances" in article VI(b) qualifies the immediately preceding reference to "criminal actions;" it tortures the context to postulate that it also qualifies the more remote phrase "civil actions to which [TRPA] is a party." (*Elbert, Ltd.* v. *Gross* (1953) 41 Cal.2d 322, 326-327 [260 P.2d 35]; *Addison* v. *Department of Motor Vehicles* (1977) 69 Cal. App.3d 486, 496 [138 Cal.Rptr. 185].) Thus, although plaintiff's complaint alleges that TRPA violated its own land-use ordinance in the proceedings on the Douglas County permit application held at TRPA's office in California, those allegations, which for present purposes we accept as true, do not bring the subject matter of this civil action within the jurisdiction of the California superior court as defined by article VI(b) of the compact.

The complaint alleges that the Nevada segment of the loop road will discharge substantial traffic into California thus causing adverse affects on property situated in this state. As an alternative basis of jurisdiction, plaintiff contends that jurisdiction of this civil action is vested in the superior court because property situated in California is "affected" thereby within the meaning of article VI(b). Undoubtedly, the Nevada segment of the loop road will have an impact in California just as a significant amount of all human activity in the Lake Tahoe basin has effects on property on either side of the state line. (See *People* ex rel. *Younger* v. *County of El Dorado, supra,* 5 Cal.3d at pp. 493-494.) These indirect consequences, however, do not supply the nexus between the litigation and the forum necessary to confer jurisdiction in a civil action. To construe article VI(b) so broadly would render its deliberately drawn limitations on extraterritorial jurisdiction virtually nugatory. To the contrary, we are obliged to interpret the provisions of the compact in keeping with the manifest legislative intent so that they are workable and reasonable and do not lead to absurd consequences. (*City of Santa Clara* v. *Von Raesfeld* (1970) 3 Cal.3d 239, 248 [90 Cal.Rptr. 8, 474 P.2d 976]; *Stanley* v. *Justice Court* (1976) 55 Cal.App.3d 244, 253 [127 Cal.Rptr. 532].) Thus we conclude that the "property affected by a civil action" referred to in article VI(b) is that property which is itself the subject of the suit. In the context of this lawsuit, there is no property in California which meets that description.

Finally, we reject plaintiff's argument that article VI(b) by its terms applies only to enforcement actions brought by TRPA, the respective states or their political subdivisions. The first sentence of article VI(b) provides: "All ordinances, rules, regulations and policies adopted by [TRPA] shall be enforced by [TRPA] and by the respective states, counties and cities." Plaintiff would have us construe this sentence as a limitation on the remainder of article VI(b). To do so, however, would require that we ignore the plain meaning of the following sentence vesting jurisdiction "over civil actions to which [TRPA] is a party...." The quoted clause is not reasonably susceptible to a restrictive interpretation limiting its application to civil actions to which TRPA is a party *plaintiff*. Obviously article VI(b) sets the jurisdictional requisites for all civil actions to which TRPA is a party in whatever capacity.

## II

Plaintiff attempts in this appeal to secure review of the trial court's order granting the motions of real parties in interest to quash service of summons. The motions were granted in a written order signed by the trial judge and filed August 14, 1978. The order is appealable. (Code Civ. Proc., § 904.1, subd. (c).) The instant appeal, notice of which was filed December 7, 1978, is from the judgment of dismissal in favor of TRPA. No appeal has been taken from the order granting the motion to quash and the time within which such an appeal may be taken has long since expired. (Rule 2, Cal. Rules of Court.) This court is without jurisdiction to review any decision or order from which an appeal might have been but was not taken. (Code Civ. Proc., § 906; *Hollister Convalescent Hosp., Inc.* v. *Rico* (1975) 15 Cal.3d 660, 674 [125 Cal.Rptr. 757, 542 P.2d 1349].)

Douglas County and its director of public works, Robert Gardner, filed a reply brief in this court September 12, 1979, in which they addressed the merits of the appeal as well as the issue of in personam jurisdiction. Contrary to plaintiff's contention, real parties in interest have not thereby submitted themselves to the jurisdiction of the California courts. The action as to them was final long before their reply brief was filed. They are not, nor could they be, affected by the judgment of the trial court from which this appeal is taken. (1 Witkin, Cal. Procedure (2d ed. 1970) Jurisdiction, § 75, pp. 599-600.) Their appearance here cannot revive a proceeding as to them long since dead and put to

rest. (See *Estate of Hanley* (1943) 23 Cal.2d 120, 123 [142 P.2d 423, 149 A.L.R. 1250].)

The judgment is affirmed.

Evans, J., and Grossfeld, J.,* concurred.

*Assigned by the Chairperson of the Judicial Council.