[Civ. No. 48241. First Dist., Div. Four. Aug. 26, 1982.]

COUNTY OF SAN MATEO, Plaintiff and Respondent, v.
ROBERT LEE BOOTH, Defendant and Appellant.

COUNSEL

Carol Samuelian Gonella for Defendant and Appellant.

George Deukmejian, Attorney General, Robert H. Philibosian, Chief Assistant Attorney General, Edward P. O'Brien, Assistant Attorney General, Gloria F. DeHart and Laurence K. Sullivan, Deputy Attorneys General, for Plaintiff and Respondent.

OPINION

**RATTIGAN, Acting P. J.**—Plaintiff and respondent County of San Mateo (the County) commenced an action against defendant and appellant Robert Lee Booth (defendant) to establish that he was the father

of a minor whom the County had supported in its aid to families with dependent children (AFDC) program, and to obtain reimbursement of the funds the County had paid out. After a nonjury trial, the court entered a judgment which declared that defendant was the father of the minor and ordered him to reimburse the County in the sum of $8,819.11. Defendant appeals from the judgment.

### The Pleadings and Procedural Sequence

The contentions on appeal require that the record be summarized in close detail. The County commenced the action by filing a "Complaint To Establish Parent-Child Relationship And Obtain Reimbursement Of Public Assistance" on February 5, 1979.[1] The County stated a single cause of action in which it alleged in pertinent part as follows:

Defendant is the "natural father" of a named minor. The County had paid $8,819.11 "in public assistance" for the support of the child during the period from April 1, 1975, to October 31, 1978. "[A]t all times herein mentioned[,] defendant is and was separated from his ... minor child .... As a result of said separation, public assistance in the form of aid, services, and medical treatment was granted to said minor child ... by plaintiff [the County] pursuant to Chapter 2, Part 3, Division 9 of the Welfare and Institutions Code [i.e., the AFDC law] .... "

Defendant had "failed, neglected, and refused to provide proper support and maintenance for the minor child," who was without "adequate means of support." Defendant "was and still is able-bodied, employed, and capable of employment with the ability to pay a reasonable sum for the support of ... the minor child .... " Defendant is "obligated" to plaintiff for "such expenses and for reimbursement under ... Welfare and Institutions Code section 11350."[2]

In the prayer of its complaint, the County prayed (among other things) for a judgment declaring that defendant is "the father of the ... child" and ordering him to "reimburse plaintiff ... County ... for

---

[1]Dates mentioned refer to the calendar year 1979 unless another year is specified.

[2]Welfare and Institutions Code section 11350 provides in pertinent part: "In any case of separation or desertion of a parent ... from a child ... which results in aid under this chapter being granted to such family, the noncustodial parent ... shall be obligated to the county for an amount equal to: ... [¶] ... (b) The amount of aid paid to the family during such period of separation ... limited ·by such parent's reasonable ability to pay during that period in which aid was granted ...."

public assistance paid for the support, maintenance, and medical care of the minor child . . ., plus interest."

On May 15, defendant filed an "Amended Answer" in which he specifically denied the material allegations of the complaint except for the allegation that he is the father of the child. In three separate affirmative defenses, he also alleged: (1) ". . . [A]t no time during the period April 1, 1975 to October 31, 1978 did the County pay any member of his family, or the family of the minor child . . ., the sum of $8,819.11 and [sic] any amount whatsoever in public assistance." (2) During that period, defendant "had substantial periods of unemployment during which . . . he was lacking reasonable ability to pay support." (3) The action was "barred by the provisions" of cited statutes of limitations.[3]

Defendant thereupon noticed a motion for summary judgment pursuant to Code of Civil Procedure section 437c. His moving papers included copies of the County's answer to the written interrogatories he had served. (See fn. 3, *ante*.) The moving papers established that the motion was made on the ground (among others) that the action was

---

[3]Defendant alleged in his "Third Affirmative Defense" that "[t]he action is barred by the provisions of . . . Code of Civil Procedure sections 335 and 336 [*sic*]."

The emergence of this defense in the amended answer should be explained. The initial record on appeal included a declaration by defendant's attorney which was filed on May 15 in support of a " . . . Motion To Allow Amendment Of Answer." The record did not otherwise document the "motion" mentioned. For this reason and others, we found it necessary to obtain the superior court's file. It shows that the following events occurred after the County commenced the action by filing the complaint on February 6:

On March 30, defendant filed an answer to the complaint in which he alleged the first two affirmative defenses pleaded in the amended answer, but not the third: i.e., he did not initially raise a defense based on any statute of limitations.

On May 15, he filed notice of a motion for an order "allowing amendment" of his answer; a proposed amended answer; a supporting memorandum by his attorney; and the abovementioned declaration by his attorney which was included in the record on appeal. The attorney alleged in the declaration that she had learned for the first time, from the County's answers to interrogatories served by defendant, that some of the AFDC payments in question has been made "prior to three (3) years before filing of the . . . complaint on February 6, 1979," and that defendant therefore requested "permission to file the attached amended answer raising the defense of the Statute of Limitations."

The "attached amended answer" included the "Third Affirmative Defense" citing Code of Civil Procedure sections 335 and "336," but the supporting memorandum explicitly cited and quoted Code of Civil Procedure section 335 and section *338*, subdivision *1* (both of which are quoted in fn. 9, *post*.)

The superior court's file also shows that on May 29 counsel for the County and defendant filed a written stipulation to the effect that the motion for leave to amend was deemed granted: i.e., the County agreed that the amended answer proposed in defendant's moving papers was to be filed as of May 15.

barred in part by two statutes of limitations: i.e., Code of Civil Procedure sections 335 and 338, subdivision 1.[4]

The motion for summary judgment was argued and denied, and the cause was tried without a jury. The court filed a memorandum decision in which it determined that the County was entitled to judgment in "the sum of $8819.11 [as prayed in the complaint] plus interest and costs . . . ." Neither party requested written findings of fact and conclusions of law, which were waived accordingly.[5] (Code Civ. Proc., § 632; see also rule 232(b), Cal. Rules of Court.)

The court thereupon entered a "Judgment For Reimbursement For Public Assistance" in which defendant was (1) "declared to be the father" of the minor child and (2) "ordered to reimburse the County . . . [in the amount of] $8,819.11 for public funds expended from April 1, 1975 to October 31, 1978."

Defendant filed a timely notice of appeal from the judgment.

### The Evidence

At the commencement of the trial, counsel for the parties orally stipulated that defendant was the father of the child, as he had "acknowledged" in his answer; that from November of 1974 through November of 1976, the County made AFDC payments totalling $7,613, of which $1,206 was paid to the mother and $6,407 was paid to a "boarding home institution"; and that the County paid $6,024 to the "boarding home institution" between February of 1976 and the end of

---

[4]Defendant again erred in citing these statutes (see fn. 3, *ante*) by referring to them as Code of Civil Procedure "§ 35" and "§ 38," but he expressly quoted section 335 and section 338, subdivision 1. He also made it clear in his supporting argument that he was relying on the three-year bar of section 338, subdivision 1.

[5]Findings having been waived, the memorandum decision is quoted here because it reflects a question of statutory construction which is presented on the appeal. It read in pertinent part as follows:

"The issue raised by defendant is that . . . [Welfare and Institutions Code section 11350, subdivision (b)] . . . gives rise to a liability as to the noncustodial parent only if the aid is paid to the 'family.' In this instance much of the aid was furnished to a boarding home.

"In this court's opinion the phrase 'paid to the family' really means 'paid on behalf of the family.' Any other interpretation would do violence to the plain intent of the statute and would be patently ridiculous. This interpretation is further bolstered by the wording in subsection (c) which use[s] the phrase 'for the support and maintenance.'

"Judgment will therefore be for the plaintiff [County] and against the defendant for the sum of $8819.11 plus interest and costs . . . ."

October, 1978 (i.e., within the three years immediately preceding the filing of the complaint on February 6, 1979).[6]

The only witness at the trial was Joseph P. Puccio, Jr., who was called by the County.[7] He testified as follows:

He is employed as an investigator in the family support division of the San Mateo County District Attorney's office. In October, 1978, he interviewed defendant "regarding the support of his child." The interview took place at "Hills Bros. Coffee," where defendant was employed at the time. He told Puccio that he had been "first employed" there in 1966.

In a discussion about whether defendant had been "able to pay during the time that the aid was being paid for the upkeep" of the child, he did not give Puccio "any indication that he was unable to pay during that time." He did "agree to pay some child support," and he signed an "agreement" to that effect during the interview. In the agreement, which was received in evidence, defendant acknowledged and agreed (1) that he is the father of the minor child and (2) that he "is able and [sic] shall pay child support in the amount of $100.00 per month commencing November 15, 1978 and continuing each month thereafter until further order of the court."

Puccio testified on cross-examination that he and defendant "discussed the fact that his [defendant's] daughter had been on aid and is [sic] on aid and that he was required by civil and criminal law to support his child, and I asked him what he could pay and why he hadn't paid, and there wasn't any basic excuse why he didn't pay a hundred dollars a month." In a discussion "about whether he was working in 1977," defendant told Puccio that "part of the time he was ill" but that

[6]Some of these figures were apparently read in court from the County's answers and supplemental answers to defendant's interrogatories. The answers (but not the interrogatories) have been included in the record on appeal among defendant's moving papers on his unsuccessful motion for summary judgment. The precise figures stipulated in court cannot be immediately reconciled with those given in the answers, but the parties should be deemed bound by the figures to which counsel stipulated.

The County's answers also showed that the "boarding home institution" to which AFDC payments were made was a home where the minor child "resided," and that its "owners and/or operators are not of blood relationship" to the child.

[7]Defendant did not attend the trial in person. His attorney informed the court at the outset that he was "not present," but that she (the attorney) was "representing him today"; that she was "not quite sure" where he was; and that he had not been "subpoenaed."

he was "working most of the time." He did not say "when he was out of work," or "if he was ever laid off from work."

Puccio had previously "discussed his [defendant's] employment with his personnel supervisor," but he had not asked the supervisor whether defendant had "ever been laid off from work." Puccio admitted that he did not know whether defendant "was ever laid off between November of 1974 and October of 1978," or "how many months he did work during that period," and he (Puccio) testified that it was his "understanding" that defendant "had worked for Hills Bros. from 1966 to the present time." Defendant "willingly agreed" to pay the amount Puccio requested, and he "said that he would be able to pay a hundred dollars a month in the future."

*Review*

I

■ Defendant contends that the judgment must be reversed because the County "failed to prove" that he had "the reasonable ability ... to pay" child support "during the period in which aid was granted." This contention amounts to a claim that the evidence is insufficient to support the trial court's implied determination that he had a reasonable ability to pay child support during the period in question.

Investigator Puccio's testimony was not refuted. It was principally based on what defendant had told him in the conversation he described. It was inferably based in part on Puccio's prior conversation with the "personnel supervisor" at the place where defendant was working in 1978. By reason of these sources, Puccio's testimony supported the inference that during the "period in which aid was granted" defendant had the "reasonable ability to pay" within the meaning of Welfare and Institutions Code section 11350, subdivision (b). (See fn. 2, *ante.*)

The trial court obviously drew that inference. In the absence of conflicting evidence, the inference was also supported by defendant's acknowledgement in the written agreement that he was currently "able" to pay child support. He did not choose to appear at the trial and testify concerning the continuity of his employment during the period in question. (See fn. 7, *ante.*) If Puccio's testimony on cross-examination suggested opposing inferences on that subject, the trial court's resolution of any conflict is to be sustained on the appeal. (*Estate of Bristol*

(1943) 23 Cal.2d 221, 223-224 [143 P.2d 689]; *Parker v. City of Foun-tain Valley* (1981) 127 Cal.App.3d 99, 117 [179 Cal.Rptr. 351]; 6 Witkin, Cal. Procedure (2d ed. 1971) Appeal, § 254, pp. 4245-4246.) The claim of insufficiency of the evidence is rejected accordingly.

## II

■ Defendant also argues that the trial court erred in ordering him to reimburse the County for the AFDC payments it made to the "boarding home institution," arguing that the controlling statute com-mands parental reimbursement of funds "paid to the family" of the needy child and not otherwise. He thus interprets the phrase "paid to the family" literally and restrictively. The trial court rejected his inter-pretation and construed the phrase to mean "paid on behalf of the family," reasoning that "[a]ny other interpretation would do violence to the plain intent of the statute and would be patently ridiculous." (See fn. 5, *ante.*)

The court applied settled rules of statutory construction in reaching its interpretation. ■ The fundamental concern of a court in constru-ing a statute is to ascertain and give effect to the legislative intent. (*Tripp v. Swoap* (1976) 17 Cal.3d 671, 679 [131 Cal.Rptr. 789, 552 P.2d 749]; *People* ex rel. *Younger v. Superior Court* (1976) 16 Cal.3d 30, 40 [127 Cal.Rptr. 122, 544 P.2d 1322]; *Addison v. Department of Motor Vehicles* (1977) 69 Cal.App.3d 486, 495-496 [138 Cal.Rptr. 185].) The process of ascertaining the legislative intent commences with the language of the statute. (*People* ex rel. *Younger v. Superior Court, supra,* 16 Cal.3d at p. 43; *Pennisi v. Department of Fish & Game* (1979) 97 Cal.App.3d 268, 272-273 [158 Cal.Rptr. 683]; *Smith v. City and County of San Francisco* (1977) 68 Cal.App.3d 227, 231 [137 Cal.Rptr. 146].) If the language is clear and unambiguous, there is no room for construction and courts should not engage in it. (*People v. Boyd* (1979) 24 Cal.3d 285, 294 [155 Cal.Rptr. 367, 594 P.2d 484]; *Solberg v. Superior Court* (1977) 19 Cal.3d 182, 198 [137 Cal.Rptr. 460, 561 P.2d 1148]; *Davis v. Hart* (1899) 123 Cal. 384, 387 [55 P. 1060]; *Hobby Industry Assn. of America, Inc. v. Younger* (1980) 101 Cal.App.3d 358, 365 [161 Cal.Rptr. 601].)

""" . . . [L]anguage of a statute should not be given a literal meaning if doing so would result in absurd consequences which the Legislature did not intend. [Citations].""" (*Younger v. Superior Court* (1978) 21 Cal.3d 102, 113 [145 Cal.Rptr. 674, 577 P.2d 1014]; *Cline v. Yamaga* (1979) 97 Cal.App.3d 239, 245 [158 Cal.Rptr. 598].) If there is uncer-

tainty as to a statute's language, consideration should be given to the consequences which will be produced by a particular construction. (*Stanley v. Justice Court* (1976) 55 Cal.App.3d 244, 253 [127 Cal.Rptr. 532]; see also *League to Save Lake Tahoe v. Tahoe Regional Planning Agency* (1980) 105 Cal.App.3d 394, 398 [164 Cal.Rptr. 357].) "Where a word of common usage has more than one meaning, the one which will best attain the purposes of the statute should be adopted, even though the ordinary meaning of the word is enlarged or restricted." (*Southland Mechanical Constructors Corp. v. Nixen* (1981) 119 Cal.App.3d 417, 431 [173 Cal.Rptr. 917] [citing *Friends of Mammoth v. Board of Supervisors* (1972) 8 Cal.3d 247, 260 (104 Cal.Rptr. 761, 502 P.2d 1049); *People* ex rel. *S. F. Bay etc. Com. v. Town of Emeryville* (1968) 69 Cal.2d 533, 543-544 (72 Cal.Rptr. 790, 446 P.2d 790)].)

 Welfare and Institutions Code section 11350 authorizes the compulsory reimbursement of funds paid "under this chapter." (See fn. 2, *ante*.) In the context of the statute, "this chapter" is chapter 2 (Aid to Families With Dependent Children, commencing with § 11200) of part 3 of division 9 of the code. The word "family" is not defined in chapter 2. The word has a familiar meaning in ordinary usage, but courts have defined it flexibly in various statutory and factual contexts. (See, e.g., *Moore v. East Cleveland* (1977) 431 U.S. 494, 504-506 [52 L.Ed.2d 531, 540-541, 97 S.Ct. 1932]; *id.*, at p. 496, fn. 2 [52 L.Ed.2d at p. 535]; *City of Santa Barbara v. Adamson* (1980) 27 Cal.3d 123, 133-134 [164 Cal.Rptr. 539, 610 P.2d 436, 12 A.L.R.4th 219].)

The Legislature has explicitly declared that the AFDC law "shall be administered in such a way that needy children and their parents will be encouraged . . . to assist in their own maintenance." (§ 11205, third par.)[8] The law itself provides that AFDC shall be granted for the support of a child who is in need "due to . . . [t]he divorce, separation or desertion of a parent . . . and resultant continued absence of a parent from the home . . . ." (§ 11250, subd. (b).) It also provides that aid shall be granted to such child who has been "placed in foster care." (§ 11251, subd. (b).) For purposes of the AFDC law, "'foster care' means care in a foster home, group home, or institution." (§ 11450, subd. (c), as added by Stats. 1972, ch. 1406, § 31.7, pp. 2983-2984; see *id.*, as amended by Stats. 1980, ch. 1166, § 22.1, pp. 3927-3928; see also § 11402 [relative to "boarding homes"].)

---

[8]Statutory citations are to the Welfare and Institutions Code until next indicated otherwise.

In the context established by these provisions, section 11350 represents a legislative pronouncement of public policy that a separated or deserted parent of a needy child who has been placed in foster care shall be "obligated" to reimburse a county for AFDC payments made to the "institution" or "boarding home" involved if the parent had the "reasonable ability to pay during that period in which aid was granted." (See fn. 2, *ante.*) It has been held in broader terms that the policy is "to insure that the moneys disbursed by the county for the aid of a needy child be returned to the public source from which they were disbursed." (*In re Marriage of Shore* (1977) 71 Cal.App.3d 290, 298 [139 Cal.Rptr. 349]; see *County of Santa Clara* v. *Support, Inc.* (1979) 89 Cal.App.3d 687, 697 [152 Cal.Rptr. 754].)

Defendant's limited interpretation of the phrase "paid to the family," as it is used in section 11350, subdivision (b), would utterly frustrate the declared policy in any case where the child involved has been placed in foster care. It would also frustrate the legislative directive that the AFDC law be administered in such manner as will "encourage[ ]" needy parents to support their own children. (§ 11205, third par., quoted *supra.*) His interpretation of the phrase is therefore to be rejected because it would "result in absurd consequences which the Legislature did not intend." (*Younger* v. *Superior Court, supra,* 21 Cal.3d 102 at p. 113; *Cline* v. *Yamaga, supra,* 97 Cal.App.3d 239 at p. 245.) The trial court correctly rejected it for this reason. (See fn. 5, *ante.*) The alternative— and broader—interpretation of the phrase by that court (see *ibid.*) was correct because it is "the one which will best attain the purposes of the statute . . ., even though the ordinary meaning of the word[s] is enlarged . . . ." (*Southland Mechanical Constructors Corp.* v. *Nixen, supra,* 119 Cal.App.3d 417 at p. 431.) Section 11350 therefore "obligated" defendant to reimburse the County for the AFDC payments it made to the "boarding home institution" where the child resided at pertinent times. (See fn. 6.)

### III

■ Defendant contends in effect that the trial court erred in ordering him to reimburse the County in the amounts of payments it made prior to February of 1976 on the ground that the recovery of those amounts is barred by the statute of limitations. He also argues that the court erred in denying the motion for summary judgment he made on that basis. (See the text at fn. 4, *ante.*) Defendant's contention is correct.

The parties agree that the applicable statutes of limitations are sections 335 and section 338, subdivision 1, of the Code of Civil Procedure.[9] ■ The County contends that the bar of these statutes is not available to defendant, because he defectively pleaded them. This contention must be examined first because the defense of a statute of limitations is waived unless it is affirmatively invoked in an appropriate pleading. (*Talbot* v. *Wake* (1977) 74 Cal.App.3d 428, 441 [141 Cal.Rptr. 463]; *Philbrick* v. *Huff* (1976) 60 Cal.App.3d 633, 642 [131 Cal.Rptr. 733]; 3 Witkin, Cal. Procedure, *op. cit. supra*, Pleading, § 939, pp. 2518-2519.)

In his amended answer, defendant alleged as an affirmative defense that "[t]he action is barred by the provisions of . . . Code of Civil Procedure Sections 335 and 336 [*sic*]." (See fn. 3, *ante*.) The second citation was obviously incorrect because Code of Civil Procedure section "336" is a five-year statute of limitations applicable to "[a]n action for mesne profits of real property." However, the County agreed to the amendment of the answer (to plead the defense of the statute of limitations) with advance knowledge that the statute to be invoked was Code of Civil Procedure section 338, subdivision 1. (See fn. 3, fifth par.) Defendant again mislabelled this statute on his motion for summary judgment, but he expressly quoted the text of section 338, subdivision 1. (See fn. 4.)

The defense of a statute of limitations is not favored by the law. (See 2 Witkin, Cal. Procedure, *op. cit. supra*, Actions, § 225, pp. 1083-1084.) "In the construction of a pleading, for the purpose of determining its effect, its allegations must be liberally construed, with a view to substantial justice between the parties." (Code Civ. Proc., § 452.) The County could not possibly have been misled or prejudiced by defendant's erroneous citations of the statute, because there was no doubt at any time that he intended to raise the bar of Code of Civil Procedure section 338, subdivision 1. (See fns. 3 and 4, *ante*.) For these reasons, the defense of the three-year bar of Code of Civil Procedure section 338, subdivision 1, was not waived, because it was "pleaded or presented to the trial court *in some fashion*." (*Estate of Horman* (1971) 5 Cal.3d

---

[9]These two sections appear in a single context, as follows: "335. The periods prescribed for the commencement of actions other than for the recovery of real property, are as follows:

" . . . . . . . . . . . . . .

"338. Within three years: [¶] 1. An action upon a liability created by statute, other than a penalty or forfeiture . . . ."

62, 72 [95 Cal.Rptr. 433, 485 P.2d 785] [italics added]; *Petersen v. W. T. Grant Co.* (1974) 41 Cal.App.3d 217, 223 [115 Cal.Rptr. 874]; see also 3 Witkin, Cal. Procedure, *op. cit. supra*, Pleading, §§ 941-942, pp. 2520-2523.)

██ Against the event that the defense was properly presented to the trial court, the County further argues that the action was not barred by the statute of limitations, (1) because the County is the "lawful assignee" of the child's cause of action against defendant as the "nonsupporting absent parent" and that it therefore "obtains the benefit of the child's own rights in the action," including the tolling of the statute during the period of the child's minority; and (2) because the parent's "obligation to support the child is a continuing duty against which the statute of limitations does not run during the time the child needs support."

These arguments were effectively rejected in *Amie v. Superior Court* (1979) 99 Cal.App.3d 421 [160 Cal.Rptr. 271], where the factual and pleading situations were very similar to those presented here. In *Amie*, a county had brought an action for reimbursement against the father of a child who had been supported on public assistance and who had never been in the father's custody. (*Id.*, at pp. 423, 425.) The father demurred to the complaint to the extent that it sought recovery of public funds paid more than three years before the filing of the complaint. (*Id.*, at p. 423.) The trial court overruled the demurrer. When the father petitioned the Court of Appeal for extraordinary relief, the county advanced the identical contentions which are made by the County in the present case. (*Id.*, at pp. 424-425.)

The Court of Appeal rejected the first argument by holding that "the disability of a minor which tolls the statute of limitations is personal and may not be transferred by assignment or subrogation. . . . [T]he county does not suffer the burdens of minority and therefore has no claim to its benefits." (*Amie v. Superior Court, supra*, 99 Cal.App.3d 421 at p. 426.) The county in *Amie* also "relied on the general rule that '[t]he obligation of a father to support his child, whether legitimate or illegitimate, is a continuing duty against which the statute of limitations does not run during the time the child needs such support.'" (See 99 Cal.App.3d at p. 426.) The *Amie* court held in response: "The wording of the rule is misleading because the very notion of the statute of limitations running against a duty (as opposed to a cause of action based on a breach of duty) is a legal absurdity. In fact, examination of the cases stating this rule indicates that in each case the issue was the child's

right to present and future support, not reimbursement for support furnished before the action was brought." (*Ibid.*) The court concluded that a county's action for reimbursement pursuant to Welfare and Institutions Code section 11350 is subject to the three-year period of limitation prescribed in Code of Civil Procedure section 338, subdivision 1. (99 Cal.App.3d at p. 427; see also *id.*, at p. 424.)

We adopt and apply the *Amie* court's conclusion here. For this reason and the others just stated relative to the statute of limitations, we hold that the trial court erred in ordering defendant to reimburse the County for the AFDC payments it made prior to February of 1976: i.e., more than three years before it commenced this action on February 6, 1979. We may correct the error by modifying the judgment to limit its principal amount to the sum which was stipulated by the parties to have been paid within the three years preceding the commencement of the action. (See fn. 6, *ante.*)

The judgment is modified by striking "$8,819.11" from line 33 on page 1 and inserting "$6,024" in lieu thereof. As so modified, the judgment is affirmed. Defendant and appellant shall recover his costs on appeal.

Christian, J., and Poché, J., concurred.