[No. B003010. Second Dist., Div. Six. Aug. 6, 1984.]

COUNTY OF VENTURA, Plaintiff and Respondent, v.
VICTORIA STARK, Defendant and Appellant.

1114

COUNSEL

T. Dale Pease for Defendant and Appellant.

Michael D. Bradbury, District Attorney, and Robert J. Bayer, Deputy District Attorney, for Plaintiff and Respondent.

OPINION

**STONE, P. J.**—Appellant, Victoria Stark, appeals from an order authorizing the County of Ventura (respondent) to seek reimbursement for moneys

expended for her minor child. (Welf. & Inst. Code, § 11200 et seq.—aid to families with dependent children [AFDC].)[1] The question presented is whether a governmental agency is precluded from seeking reimbursement for AFDC monies from a parent of a disabled minor who also receives aid through the state supplementary program for the aged, blind and disabled (ABD). We hold that such reimbursement is not proscribed by Section 12350, but reverse the trial court's order for reasons discussed below.

## FACTS

Minor Dion P. (son of Victoria Stark) is a disabled person residing in a nonmedical out-of-home care facility paid for by the Social Security Administration and the County of Ventura (Welf. & Inst. Code, div. 9, pt. 3) in monthly amounts as follows: $213.20—Social Security, $296.80—ABD (§§ 12000-12401), $390.00—AFDC (§§ 11200-11507). Respondent brought the instant action for on-going child support and reimbursement. (§§ 11350, 11350.1.) The only question presented to the trial court was whether section 12350 relieved the mother of any obligation to reimburse the county for AFDC, the parties having stipulated to a payment schedule if such liability was found. The trial court held that appellant is responsible for reimbursing the county for past and present aid provided under sections 11200 through 11489 (AFDC) or sections other than section 12200. The instant appeal ensued.[2]

## DISCUSSION

Appellant contends she is not liable for the support of her minor son because of section 12350, which provides: "No relative shall be held legally liable to support or to contribute to the support of any applicant for or recipient of aid under this chapter. No relative shall be held liable to defray in whole or in part the cost of any medical care or hospital care or other service rendered to the recipient pursuant to any provision of this code if he is an applicant for or a recipient of aid under this chapter at the time such medical care or hospital care or other service is rendered. [¶] Notwithstanding the provisions of Section 206 of the Civil Code, or Section 270c of the Penal Code,[3] or any other provision of this code, no demand

---

[1]All statutory references hereinafter are to the Welfare and Institutions Code unless otherwise indicated.

[2]Appellant appeals from the minute order of April 7, 1983. Since a formal written order was eventually prepared and signed by the trial court, we deem the notice of appeal timely filed pursuant to Rules of Court 2(c). (*In re Marriage of Wood* (1983) 141 Cal.App.3d 671, 678 [190 Cal.Rptr. 469].)

[3]It is a misdemeanor for an adult child to fail to provide for an indigent parent. (Pen. Code, § 270c.) Parents and children have a reciprocal duty of support where there is a need. (Civ. Code, § 206.)

shall be made upon any relative to support or contribute toward the support of any applicant for or recipient of aid under this chapter. No county or city and county or officer or employee thereof shall threaten any such relative with any legal action against him by or in behalf of the county or city and county or with any penalty whatsoever. (Added by Stats. 1975, ch. 1136, p. 2811, § 2.)"

Prior to 1975, section 12350 provided that a state could proceed against an adult child living within this state who failed to contribute to the support of his parents. Respondent asserts that (1) appellant is not a relative within the meaning of present section 12350 since the former statute spoke of the obligation of adult children only; and (2) restrictions of section 12350 do not apply to recovery of aid under the AFDC program.

Respondent's first argument is without merit. ▮ The fundamental objective in construing a statute is to ascertain and give effect to the legislative intent. (*County of San Mateo* v. *Booth* (1982) 135 Cal.App.3d 388, 396 [185 Cal.Rptr. 349].) ▮ We begin with the language of the statute: "If the language is clear and unambiguous, there is no room for construction and courts should not engage in it." (*Ibid.*) It is clear that the legislature intended to broaden the class of persons protected by section 12350 in its present form since nowhere in that section is reference made to "adult children" or "aged parents." "Relative" is defined as, "a person connected with another by blood or affinity." (Webster's New Internat. Dict.—Unabridged (3d ed. 1961) p. 1916.) Lest there be any doubt, a mother is a relative of her son!

▮ Respondent's second point is well taken; prohibitions of section 12350 are limited to *aid* under the ABD program, and *services* under any provisions of the Welfare and Institutions Code. Both aid and services are defined in the code: "'Aid' means financial assistance provided to or in behalf of needy persons under the terms of this division, including direct money payments and vendor payments." (§ 10052.) "'Services' means those activities and functions performed by social work staff and related personnel of the department and county departments with or in behalf of individuals or families, which are directed toward the improvement of the capabilities of such individuals or families maintaining or achieving a sound family life, rehabilitation, self-care, and economic independence." (§ 10053.) Both AFDC and ABD programs are part of division 9 of the code and are subject to the definitions therein. Whereas the first sentence of Section 12350 refers to nonliability for support resulting from aid given under chapter 3 (ABD) the second sentence speaks to nonliability for cost of medical care, hospital care or other *service* rendered pursuant to *any*

provision of the code if the recipient is receiving aid under ABD at the time the medical, hospital or other services are rendered.

■ "Where a statute is theoretically capable of more than one construction we choose that which comports with the intent of the Legislature." (*California Mfrs. Assn.* v. *Public Utilities Com.* (1979) 24 Cal.3d 836, 844 [157 Cal.Rptr. 676, 598 P.2d 836].) Appellant's contention that the second paragraph of section 12350 broadened the categories of aid which need not be reimbursed would "lead to mischief or absurdity". (*Ibid.*) It makes no sense for the Legislature to enact a detailed procedure for enforcement of child support obligations in chapter 2 (AFDC) only to abolish its collection in chapter 3.

The Legislature explicitly declared that, "Each family has the right and responsibility to provide sufficient support and protection of its children, . . ." (§ 11205 added by Stats. 1982, ch. 1329, § 11.) "In the context established by these provisions, section 11350 represents a legislative pronouncement of public policy that a separated or deserted parent of a needy child who has been placed in foster care shall be 'obligated' to reimburse a county for AFDC payments made to the 'institution' or 'boarding home' involved if the parent had the 'reasonable ability to pay during that period in which aid was granted.' . . . It has been held in broader terms that the policy is 'to insure that the moneys disbursed by the county for the aid of a needy child be returned to the public source from which they were disbursed.' [Citations.]" (*County of San Mateo* v. *Booth, supra,* 135 Cal.App.3d 388, 398.)

■ Furthermore, "(T)he provisions [of the Social Security Act, 42 U.S.C.A. § 601 et seq.] seek to secure parental support in lieu of AFDC support for dependent children." (*King* v. *Smith* (1968) 392 U.S. 309, 332 [20 L.Ed.2d 1118, 1134, 88 S.Ct. 2128]; cf. Welf. & Inst. Code, ch. 2, art. 7, Enforcement, § 11475-11476.1, amended by Stats. 1981 to 1982, 1st Ex.Sess., ch. 3, §§ 31-35.) ■ A child is eligible for AFDC assistance if the child is "needy" (42 U.S.C. § 606) but "needy" is not equivalent to "destitute" or "penniless." (*Bryant* v. *Swoap* (1975) 48 Cal.App.3d 431-438 [121 Cal.Rptr. 867].) Ability to support a needy child may coexist with eligibility for AFDC benefits. (*Ibid.*) While AFDC eligibility is governed by federal law, need and benefit levels are governed by state law. (*Id.,* at p. 436, fn. 5, citing *King* v. *Smith, supra,* 392 U.S. at pp. 318-319 [20 L.Ed.2d at pp. 1126-1127].)

■ It is clear that a principal purpose of chapter 2 (AFDC) is the enforcement of parental support obligations for needy children. Parents may be required to reimburse the state for counsel costs in juvenile proceedings

or for medical treatment of a minor's physical injuries or care of a mentally-retarded minor. (*In re Ricky H.* (1970) 2 Cal.3d 513, 518 [86 Cal.Rptr. 76, 468 P.2d 204]; *In re Dudley* (1966) 239 Cal.App.2d 401, 404 [48 Cal.Rptr. 790] et seq.; *County of Alameda* v. *Kaiser* (1965) 238 Cal.App.2d 815, 817-818 [48 Cal.Rptr. 343].) Nevertheless, governmental agencies may not obtain reimbursement from relatives for costs of maintaining public institutions for public benefit. (*In re Jerald C.* (1984) 36 Cal.3d 1, 6 [201 Cal.Rptr. 342, 678 P.2d 917]; *Dept. of Mental Hygiene* v. *Kirchner* (1964) 60 Cal.2d 716, 722-723 [36 Cal.Rptr. 488, 388 P.2d 720, 20 A.L.R.3d 353].) ". . . the long tradition of law and history of societal custom of a duty to support poor adult children and parents must be deemed the substantial equivalent of the common law duty to support minor children. The duties may not be distinguished in terms of the state's right to reimbursement. On the one hand the state, in accordance with *Swoap,* may obtain reimbursement for support allowances paid to or for minors. On the other hand the common law duty to support minor children does not authorize the state to recover the costs of confinement imposed for the protection of society and the minor and his rehabilitation." (*In re Jerald C., supra,* 36 Cal.3d 1, 9.) In the instant case, the child was not institutionalized for protection of society but was voluntarily placed in an out-of-home care facility for his own benefit and that of his parents.

█ The intent of chapter 3 (ABD) is to implement a state supplementary program pursuant to title XVI of the Social Security Act (42 U.S.C.A. § 1381 et seq.) and a program for state services to the aged, blind or disabled to meet the requirement of title VI of the Social Security Act (now 42 U.S.C.A. § 1397 et seq.) (§ 12001 added by Stats. 1973, ch. 1216, p. 2904, § 37, eff. Dec. 5, 1973). The object and purpose of this chapter is, "to provide persons whose need results from age, blindness or disability with assistance and services which will encourage them to make greater efforts to achieve self-care and self-maintenance, whenever feasible, and to enlarge their opportunities from independence." (§ 12002 added by Stats. 1973, ch. 1216, p. 2904, eff. Dec. 5, 1973.)

Although the focus of former section 12350 was the obligation of adult children to aged parents, that deviation from the more usual custom of parents aiding their children interfered with family relationships and introduced guilt and shame into elderly citizens, who having made their contribution to society, suddenly found themselves dependent on their children. (See *Review of Selected 1972 California Legislation* (1973) 4 Pacific L.J. 432, 435.) Additionally, the implications were ominous; there was fear that liability to reimburse the state might no longer be limited by obligations under Civil Code section 206. "(R)esponsible relative provisions could be imposed upon siblings, aunts and uncles, and perhaps even grandparents

and grandchildren." (Fenning, *The Supreme Court of California* (1975) 63 Cal.L.Rev. 85, 101.)

Furthermore, the possibility existed that the state government might attempt to find other services for which some responsible relatives could be charged. "Not only can this be applied to adult children of parents receiving pensions but the state may also use this power to demand reimbursement from parents whose children are taking special classes in school, participating in recreation programs or utilizing lower public transportation rates. In such a case, the state would merely have to demonstrate a rational relationship between the purpose of the program and the group to be charged with its cost." (Harmon & Karpman, *Swoap* v. *Superior Court: Old Age Security and "Relative Responsibility" Laws* (1974) 5 Golden Gate L.Rev. 179, 186.)

The genesis of "relative responsibility" was the Elizabethan Poor Law of 1601 designed to indemnify the public and to minimize costs in aiding the poor. (tenBroek, *California's Dual System of Family Law: Its Origin, Development, and Present Status, Part 1* (1964) 16 Stan.L.Rev. 257, 283) Senate Bill No. 42 (1972 Regular Session) as originally introduced January 11, 1972, attempted to delete entirely the responsible relative provision of the old age security program but was amended merely to reduce offsprings' contribution to the level existing prior to the Welfare Reform Act of 1971. *Review of Selected 1972 California Legislation, supra,* 4 Pacific L. J. 432, at p. 434.)

With this background in mind the intent of section 12350 becomes clear: No relative shall be legally liable to support or to contribute to support of any applicant for or recipient of financial aid given under chapter 3 (ABD) or for the cost of any medical care, hospital care or other service rendered to the recipient pursuant to *any* provision of the Welfare and Institutions Code so long as the applicant or recipient is receiving *aid* under the ABD program at the time such medical care or hospital care or other service is rendered.

Nothing in sections 12350 or 12351, however, precludes a governmental agency from seeking reimbursement from parents for aid received under chapter 2 (AFDC) *so long as said aid has not been used to pay for medical care or hospital care or other service rendered while the recipient was also receiving aid under chapter 3 (ABD).*

Whereas the record herein indicates that the minor receives approximately $390 per month from the AFDC program, there is no evidence of actual monthly costs of the total care facility, or breakdown of costs of services, medical and non-medical, versus room and board. We do not know whether

the money received from social security and the ADB program covers the total monthly cost of medical or hospital care and other services provided under the Welfare and Institutions Code, or whether part of the AFDC funds are used to defray those expenses. It is possible that the cost of the child's monthly care exceeds the total aid received from all three programs.

In the record before us, the County of Ventura failed to provide any evidence in the trial court that the money it was seeking to collect was used solely for the minor's support and not for medical care, hospital care or other services under the code. It is impossible to ascertain whether appellant would be paying for the child's support or a service for which reimbursement is proscribed by section 12350. The order for support and reimbursement is reversed and remanded for further trial to give the district attorney the opportunity to present evidence if he wishes to show what portion, if any, of the AFDC funds were expended for purposes other than those which we have held nonreimbursable.

Abbe, J., and Gilbert, J., concurred.