[No. F004415. Fifth Dist. July 22, 1985.]

THE PEOPLE, Plaintiff and Respondent, v.
KEITH ALLEN McCASKEY, Defendant and Appellant.

COUNSEL

Brian C. Davis, under appointment by the Court of Appeal, for Defendant and Appellant.

John K. Van de Kamp, Attorney General, Joel Carey and David Rhodes, Deputy Attorneys General, for Plaintiff and Respondent.

OPINION

BEST, J.—Does Government Code section 13967 as amended in 1983 apply to persons committing offenses between its effective date of September 27, 1983, and its operative date of January 1, 1984? We conclude that it does not.

Defendant pleaded nolo contendere to violating Vehicle Code sections 23153, subdivision (a), count I, 20002, subdivision (a), count III, and 14601, subdivision (a), count IV. The violations were all committed on November 24, 1983. In addition to imposing a prison sentence, the trial court ordered defendant to pay a restitution fine of $3,000 pursuant to Government Code[1] section 13967.

---

[1] All further statutory references are to the Government Code unless otherwise specified.

Defendant contends the Legislature intended section 13967 as amended in 1983 to be applied only to those persons who committed offenses after the operative date of January 1, 1984, and any attempt to apply the statute retroactively would violate the ex post facto laws. Defendant further contends any fine imposed would have to be ordered pursuant to section 13967 as it read prior to the 1983 amendment and, therefore, only after the court determined defendant's present ability to pay and the economic impact of a fine upon his dependents.

## DISCUSSION

Section 13967 was amended by Assembly Bill No. 1485 during the 1983-1984 Regular Session of the Legislature. The bill was signed by the Governor on September 26, 1983, and filed with the Secretary of State on September 27, 1983. It was passed as an urgency measure to take effect immediately. (See Stats. 1983, ch. 1092, § 426, p. 4089.) However, the Legislature also provided that the bill would become operative on January 1, 1984. (See Stats. 1983, ch. 1092, § 427, p. 4089.)

The prior form of section 13967 was significantly different from the present form. It provided that a person convicted of a violent crime resulting in the injury or death of another person could be ordered to pay a fine of at least $10 but not to exceed $10,000. The fine was to be imposed only after the court inquired into the person's present ability to pay and the economic impact of the fine on the person's dependents. (Stats. 1981, ch. 166, § 3, p. 967.) Under the present section 13967, the minimum fine is $100. Also, a person convicted of *any* crime shall be ordered to pay restitution, while previously a person had to be convicted of a crime of violence before he would be subject to a fine. Furthermore, while the court is presently required to look at certain factors in setting the amount of the fine, it need not inquire into the ability of a defendant to pay and the financial consequences of a fine on defendant's dependents before imposing the fine. (See § 13967, subd. (a).)

The Attorney General agrees that if the statute was applicable only after the operative date of January 1, 1984, the application of the statute to defendant would violate the prohibition against ex post facto laws. However, the Attorney General argues the Legislature intended the provisions of section 13967 to have full force and effect on the effective date of September 27, 1983, and to be applied to all persons who committed offenses after this effective date.

The question presented on appeal, then, is whether the Legislature intended section 13967 to be fully operable on the effective date of September 27, 1983, or the operative date of January 1, 1984. Based on established rules of statutory construction, we conclude the latter operative date of January 1, 1984, was intended by the Legislature to control the implementation of section 13967.

■ The applicable rules of statutory construction may be summarized as follows: In construing a statute, the court's primary goal is to find and give effect to the legislative intent or purpose in enacting the statute. (*People v. Caudillo* (1978) 21 Cal.3d 562, 576 [146 Cal.Rptr. 859, 580 P.2d 274]; *People* ex rel. *Younger* v. *Superior Court* (1976) 16 Cal.3d 30, 40 [127 Cal.Rptr. 122, 544 P.2d 1322]; *County of San Mateo* v. *Booth* (1982) 135 Cal.App.3d 388, 396 [185 Cal.Rptr. 349].) ■ The words and language of the statute are the primary source of legislative intent. The court must first look to the language of the statute to ascertain legislative intent, giving effect to the usual, ordinary import of the language. If the language is clear and unambiguous then the court need not engage in further construction; it merely applies the statute as expressed. (*People* v. *Belleci* (1979) 24 Cal.3d 879, 884 [157 Cal.Rptr. 503, 598 P.2d 573]; *People* v. *Haney* (1984) 156 Cal.App.3d 109, 115 [202 Cal.Rptr. 579]; *County of San Mateo* v. *Booth, supra,* 135 Cal.App.3d at p. 396.) If the court determines the statute is ambiguous, other rules of statutory construction must be used to interpret the legislative intent.

■ In construing the statute, the court must presume each word, phrase or provision in the statute was intended by the Legislature to have meaning and perform a useful function. (*Mahdavi* v. *Fair Employment Practice Com.* (1977) 67 Cal.App.3d 326, 334 [136 Cal.Rptr. 421]; *Carleson* v. *Unemployment Ins. Appeals Bd.* (1976) 64 Cal.App.3d 145, 155-156 [134 Cal.Rptr. 278].) ■ Also, the statute should be construed as a whole and inconsistent parts of the statute should be harmonized if possible. (*People* v. *Superior Court (Reed)* (1979) 98 Cal.App.3d 39, 49 [159 Cal.Rptr. 310], disapproved on other grounds in *People* v. *Davis* (1981) 29 Cal.3d 814, 827, fn. 5 [176 Cal.Rptr. 521, 633 P.2d 186]; *Piazza Properties, Ltd.* v. *Department of Motor Vehicles* (1977) 71 Cal.App.3d 622, 633 [138 Cal.Rptr. 357].) If conflicting provisions of a statute cannot be harmonized, then, the provision that is positioned later in the statute normally controls the earlier provision. (*Hartford Acc. etc. Co.* v. *City of Tulare* (1947) 30 Cal.2d 832, 835 [186 P.2d 121]; *Kalina* v. *San Mateo Community College Dist.* (1982) 132 Cal.App.3d 48, 54 [183 Cal.Rptr. 12]; 58 Cal.Jur.3d, Statutes, § 106, p. 482.) ■ Furthermore, " 'Statutes must be given a reasonable and common sense construction in accordance with the apparent purpose and intention of the lawmakers—one that is practical rather than

technical, and that will lead to a wise policy rather than to mischief or absurdity.'" (*Bush* v. *Bright* (1968) 264 Cal.App.2d 788, 792 [71 Cal.Rptr. 123].) ■ Finally, in construing a criminal statute, the court must be "guided by the principle that '[i]n construing a criminal statute, a defendant "must be given the benefit of every reasonable doubt as to whether the statute was applicable to him." [Citation.]' (*People* v. *Baker* (1968) 69 Cal.2d 44, 46 [69 Cal.Rptr. 595, 442 P.2d 675].)" (*People* v. *Caudillo, supra*, 21 Cal.3d at p. 576.)

■ Chapter 1092 of the 1983 Statutes was a part of the Crime Victim Restitution Program of 1983 and enacted in response to Proposition 8, adopted by the voters in June 1982. Among other things, chapter 1092 amended a multitude of sections contained in the California codes relating to the imposition of fines. The facts supporting the necessity to pass the measure as an urgency statute are set out in Statutes 1983, chapter 1092, section 426, page 4089: "This act is an urgency statute necessary for the immediate preservation of the public peace, health, or safety within the meaning of Article IV of the Constitution and shall go into immediate effect. The facts constituting the necessity are: [¶] Provisions of law which were recently enacted (Ch. 80, Stats. 1982), changed certain monetary limits with respect to misappropriated property or labor, which form the basis upon which a crime is classified as either a misdemeanor or felony. In order to insure that similar violations of the law are punishable by similar penalties, it is necessary for this act to take effect immediately." The last section of chapter 1092, section 427, then provided in part, "This act shall become operative January 1, 1984."

The amendment to section 13967, being only one of the numerous amendments to various code sections provided by chapter 1092 of the 1983 Statutes, we must determine whether the Legislature intended chapter 1092 to be fully applicable on the stated effective date of September 27, 1983, or whether the Legislature intended to delay its application to the later operative date of January 1, 1984.

■ Some cases and Attorney General opinions have discussed the situation in which a statute is given both an effective date and an operative date. It appears from these opinions that when the Legislature gives both an operative date and an effective date, the operative date is the date upon which the directives of the statute may be actually implemented. The effective date, then, is considered that date upon which the statute came into being as an existing law.

In *Cline* v. *Lewis* (1917) 175 Cal. 315, 318 [165 P. 915], the Supreme Court noted, "'A legislative act cannot become operative until it has be-

come a law, but the time when it becomes operative may be much later than the date when it becomes a law. . . .'" The effective date of a statute, therefore, may be deemed the date upon which a statute comes into existence as a law. The Legislature, then, can provide an operative date later than the effective date depending on the circumstances. These definitions of effective and operative have been used in several opinions of the Attorney General.

In 15 Ops.Cal.Atty.Gen. 30, the Attorney General was asked to interpret an article of the state Constitution. The article was given an effective date of November 13, 1949, and an operative date of March 1, 1950. The Attorney General recognized that "A statute may be framed so as [to] provide an effective date and also an operative date (*Callahan* v. *San Francisco* (1945) 68 C.A. 2d 286). A statute cannot become operative until it has become a law, but the date when it becomes operative may be much later than the date when it becomes effective as a law (*Cline* v. *Lewis* (1917) 175 Cal. 315)." (15 Ops.Cal.Atty.Gen. 32 (1950).) The Attorney General, then, concluded that an agency affected by the new article could perform acts in preparation of the dictates of the article after the effective date in anticipation of the operative date, when the agency would be required to implement the new article. (See 15 Ops.Cal.Atty.Gen. 30, 32 (1950).)

In a more recent opinion by the Attorney General, the Attorney General discussed the differences between a statute's date of enactment, effective date and operative date. The Attorney General held a bill was enacted when signed by the Governor. (57 Ops.Cal.Atty.Gen. 451, 454 (1974).) The bill's effective date was different from the enacted date, the effective date being the date mandated by the Constitution or January 1 next following a 90-day period from the date of enactment. The Attorney General also noted, "Although a statute may become 'effective' and 'operative' on the same date, it is possible to frame an act so as to provide differing effective and operative dates. Although the operative date may not precede the effective date, the date when it becomes operative may be much later than the date when it becomes effective as a law." (57 Ops.Cal.Atty.Gen. 454.) By way of example, the Attorney General examined Statutes 1973, chapter 358. That chapter was enacted on August 31, 1973, the date the Governor signed the bill. The statute was an urgency statute, thus the bill became effective immediately on August 31, 1973. The Attorney General further noted that "Although the Legislature did not choose to do so in this act, they could have also specified differing 'operative' dates for the various sections of the bill." (57 Ops.Cal.Atty.Gen. 455.) ■ According to these decisions and opinions, then, the Legislature properly provided for an operative date that was different from the effective date of section 13967. The inclusion of

an operative date, then, was not an accident and should not be deemed surplusage. Chapter 1092 became effective, or came into existence as a law, on September 27, 1983. The provisions of the statute were not to be implemented until the operative date of January 1, 1984.

Also, that the Legislature specifically intended a delay between the effective date and the operative date of this statute is supported by the facts surrounding the statute's enactment. In *People* v. *Hinojosa,* the Determinate Sentencing Act was given two dates, one effective and one operative. In determining which date controlled the statute's provisions, the court noted in part that the operative date appeared to be "a device to delay the execution and consequences of a drastic new sentencing law, thus allowing everyone involved to 'gear up' and get ready for the impact of the new law." (*People* v. *Hinojosa* (1980) 103 Cal.App.3d 57, 64 [162 Cal.Rptr. 793].) This also may be true in the case at bench. Chapter 1092 of the 1983 Statutes consisted of an extensive number of amendments to numerous code sections changing the monetary limits for fines, restitution and penalties. It is reasonable to conclude that the Legislature wanted the courts to have time to get ready for the new monetary limits; therefore, the Legislature provided for a delay before the statute actually would be implemented.

Furthermore, assuming that the two conflicting provisions of chapter 1092 may not be harmonized, the operative date of January 1, 1984, should control. ■ It is an established rule of statutory construction that if two provisions in the statute are inconsistent and may not be harmonized, the provision positioned later in the statute will control the earlier provision. ■ The final statement of the Legislature in Assembly Bill No. 1485 was section 427 of chapter 1092, which provided the statute would become operative January 1, 1984. This would control over the date of September 27, 1983, which is provided for in section 426 of chapter 1092. (*Hartford Acc. etc. Co.* v. *City of Tulare, supra,* 30 Cal.2d at p. 835; 58 Cal.Jur.3d, Statutes, § 106, p. 482.)

Finally, any possible ambiguity arising by the inclusion of differing effective and operative dates in chapter 1092 must be resolved in favor of defendant. (*People* v. *Caudillo, supra,* 21 Cal.3d at p. 576.)

We hold that chapter 1092 was intended by the Legislature to apply to those defendants who committed offenses on or subsequent to January 1, 1984. Since defendant's offenses were committed on November 24, 1983, the trial court erred in imposing the restitution fine pursuant to the present section 13967.

## Disposition

The restitution fine of $3,000 imposed as a part of the judgment herein is vacated and the judgment is affirmed in all other respects. The case is remanded to the trial court with directions that any fine imposed be ordered pursuant to prior section 13967. (See Stats. 1981, ch. 166, § 3, p. 967.)

Hanson (P. D.), Acting P. J., and Hamlin, J., concurred.